```
                      IN THE UNITED STATES DISTRICT COURT
1                        NORTHERN DISTRICT OF ILLINOIS
                                EASTERN DIVISION
2

3   PROTECT OUR PARKS, INC.,         )  Docket No. 18 CV 3424
    et al.,                          )
4                                    )
             Plaintiffs,             )
5                                    )  Chicago, Illinois
                  vs.                )  September 20, 2018
6                                    )  9:45 o'clock a.m.
    CHICAGO PARK DISTRICT and CITY   )
7   OF CHICAGO,                      )
                                     )
8            Defendants.             )

9
                   TRANSCRIPT OF PROCEEDINGS - Motion
10            BEFORE THE HONORABLE JOHN ROBERT BLAKEY

11
    APPEARANCES:
12  For the Plaintiffs:     ROTH FIORETTI LLC
                            BY:  MR. ROBERT FIORETTI
13                               MR. MARK D. ROTH
                            311 South Wacker Drive
14                          Suite 2470
                            Chicago, Illinois  60606
15
    For Chicago Park District:
16                          BURKE WARREN MacKAY & SERRITELLA PC
                            BY:  MR. JOSEPH P. RODDY
17                          330 North Wabash Avenue
                            22nd Floor
18                          Chicago, Illinois  60611

19  For City of Chicago:    CITY OF CHICAGO, DEPARTMENT OF LAW
                            BY:  MR. ANDREW W. WORSECK
20                          30 North LaSalle Street
                            Suite 1230
21                          Chicago, Illinois  60602

22

23              Laura LaCien, CSR, RMR, CRR
                     Official Court Reporter
24         219 South Dearborn Street, Suite 1212
                    Chicago, Illinois  60604
25                       (312) 408-5032
```

1       (The following proceedings were had in open court:)
2           COURTROOM DEPUTY: 18 C 3424, Protect Our Parks
3  versus Chicago Park District.
4           THE COURT: Good morning, counsel. Appearances?
5           MR. FIORETTI: Good morning, your Honor. Bob
6  Fioretti on behalf of the plaintiffs.
7           MR. ROTH: Good morning, your Honor. My name is
8  Mark Roth, R-o-t-h. I also represent the plaintiffs.
9           MR. WORSECK: Good morning, your Honor. Andrew
10 Worseck for the City.
11          MR. RODDY: Good morning, Judge. Joe Roddy on
12 behalf of Chicago Park District.
13          THE COURT: There was a motion -- it's more of a
14 status report than anything else but it was styled a motion
15 to amend or correct the record. There was a response filed.
16 The Court has reviewed everything.
17          Do the parties want to be heard on that filing?
18          MR. ROTH: Yes, your Honor --
19          THE COURT: Go ahead.
20          MR. ROTH: -- very briefly.
21          So obviously, as we set forth in our motion to
22 correct, we believe that the City and the Park District
23 misrepresented the relationship between the activities that
24 were going on in Jackson Park with respect to cutting down
25 these century-old trees in Jackson Park and relocating a

1  track and field. When we came before you -- and Mr. Fioretti
2  was here at the last hearing, I was not here, but I did read
3  the transcript and you specifically asked the City of Chicago
4  whether the two projects were related.
5       And specifically you asked: Well, is it your
6  position that that's not related to the Obama Center,
7  correct? And the City's attorney said: Correct, it's a
8  separate project.
9       So as it turns out, it's not a separate project.
10 They are one in the same. It's all interrelated. And you
11 have to put this into the context of what's happening when we
12 filed this motion to lift the stay. We're getting reports
13 obviously that there's trees are being cut down in Jackson
14 Park in the vicinity of the Obama Center so we scramble and
15 we file our motion to lift the stay because the case had
16 really been stayed while the City was supposed to be enacting
17 a new ordinance to correct what we believe are glaring
18 illegalities of the original ordinances and so there are --
19 they come into court and they say well don't worry about
20 anything because we're not going to do any construction work
21 in Jackson Park while this is going on. We believed them.
22 We then find out that they're cutting down these trees so we
23 scramble; we file a motion to lift the stay. The City and
24 the Park District come into court and they say that they're
25 not related.

1          Afterwards, we had issued FOIA requests and we found
2   out that they are absolutely related and we found a donation
3   agreement from the Obama Foundation which provides that the
4   Obama Foundation is actually paying for the relocation work.
5   We found the Chicago Plan Commission has a resolution that no
6   construction work with respect to the track and field is to
7   take place until the federal review process is complete which
8   we were unaware of because actually the Park District issued
9   a statement through its representative Heather Gleason
10  earlier on that said that the renovation work can proceed
11  because no federal reviews are required so it turns out that
12  after our -- this information comes to light and we're in
13  court, that that's absolutely not true.
14          So we've asked in the motion for a couple things.
15  We had asked that the City not perform anymore work in
16  Jackson Park.  We had asked that until there's some decision
17  in this case that that construction work be stayed, number
18  one.  And, number two, we had asked that discovery would
19  commence.  So in response to our motion, apparently we
20  learned that the City's official position is going to be
21  okay, we're not going to do anything in Jackson Park until at
22  least the end of 2018 and that's -- so that's certainly a
23  step in the right direction.
24          So if you recall kind of the history of this case,
25  we filed the case in May.  The City and the Park District

1  asked for an extension of time to file their responsive
2  pleading into early July.  We agreed to that.  We said that's
3  fine.  Then what happened is, they apparently really took a
4  deep dive into our complaint and the City's attorney said
5  well we need additional time because now we have to draft new
6  ordinances and -- which was never contemplated before but now
7  we're going to draft new ordinances.  So the City was
8  supposed to have done that and presented that in July.  That
9  didn't happen because we were going to come back here, if you
10 recall -- I think it was August 28th we were supposed to be
11 back here and report on where that ordinance was at so we
12 could set some time tables for answering and discovery.  The
13 ordinance has still not been presented, apparently.
14         Now what the City is saying is okay, we're going to
15 vote on an ordinance on October 31st so forget about the
16 prior date.  The last time we were in court, you entered an
17 order stating that responsive pleadings are to be filed on or
18 before November -- October 22nd and so now the City is saying
19 okay, well, throw that out the window as well, we want to
20 continue this until November, not for responsive pleadings,
21 but for a status.
22         So in response to that, if that's what they want --
23 what everybody wants is some clarity on what's going on here
24 because, quite honestly, there's a lot of moving parts here.
25 There's a lot of -- I'm trying to be as tactful as I can -- I

1 guess, misrepresentations that are going on on the other side
2 of the coin here, we believe, so we want clarity too.
3 　　　　So what we're asking for is we're asking for some
4 written discovery to take place now so that when we come back
5 in November for a status hearing if that's the Court's
6 ruling, that we have clarity, that we understand the
7 agreements that are outstanding, the side agreements, if any,
8 the approvals that have been generated or necessary so that
9 we're on the same playing field that the City of Chicago and
10 the Park District are on and -- and obviously discovery is a
11 two-way street.
12 　　　　But we're asking that if the Court is going to
13 continue thing out again -- and again, this case was filed in
14 May and we're not even looking for -- to a responsive
15 pleading now until probably sometime, quite honestly, at the
16 end of December or maybe early January.  So in the interim
17 and we have some time, we're asking for written discovery and
18 that's consistent with my initial time that I appeared before
19 you on status on July 5th and you asked:  Do you anticipate
20 taking discovery?  And I said well, we anticipate -- we're
21 not going to foreclose discovery.  We anticipate some limited
22 discovery.  And I think to get us on the same playing field
23 and the same level of knowledge as the City and the Park
24 District, we're asking that we be able to take some limited
25 discovery right now.

1 THE COURT: Do you want to respond, counsel? I know
2 you do. Go ahead.
3 MR. WORSECK: Yes. Thank you, Judge. Judge, this
4 is the second time in as many months that we've been in front
5 of you on what is a side-show. They've -- the plaintiffs
6 have filed two serial motions about the track and field that
7 is not challenged in the complaint and, you know, not only is
8 that a problem with their fixation on the track and field but
9 it's now morphed into this thing where they are accusing the
10 defendants of making misrepresentations, of concealing facts,
11 of making false statements.
12 As we pointed out in our filing last night, all of
13 that is completely frivolous. The plaintiffs themselves in
14 both of the motions they filed on this issue have made
15 arguments and have attached documents showing that the
16 material facts that they claim they were concealed, the fact
17 that there was an agreement between the Foundation and the
18 Park District for the track and field, the fact that the new
19 track and field was effectively a relocation of an existing
20 track and field on what will be the site of the OPC and the
21 fact that the Foundation is paying $3.5 million in support of
22 the new track and field, all of those have been public for
23 months going back at least until February of this year when
24 the Park District itself in a press release that it issued on
25 the very day the agreement was signed with the Foundation

1   talked about all of this.

2   So the idea that we have been hiding the ball when
3   plaintiffs have now filed two motions putting the ball right
4   in front of the Court is frankly absurd.  It's time to move
5   beyond this side-show and these distractions; and as we set
6   out in our filing -- and it seems like counsel here is in
7   agreement -- that it would make sense in light of the fact
8   that we now have today in the City Council the ordinance that
9   would govern the Foundation's use of this site for the OPC.
10  That is being introduced.  We expect that that would be taken
11  up by the full Council at their next meeting which will be
12  next month, October 31st.  And upon what we anticipate to be
13  the final vote on that ordinance, the matters relevant to
14  this Court's adjudication of the actual merits of the
15  challenge to what really is at issue here -- not the track
16  and field, but the OPC -- will be solidified.  We will have
17  the ordinance.  We will have the use agreement.  We have the
18  prior ordinances on the OPC.  We think at that time we will
19  have everything and the Court will have everything that would
20  be needed to adjudicate whether the OPC is a valid use of the
21  Jackson Park land and we think that it makes sense at that
22  point for the plaintiffs to decide whether they want to amend
23  their complaint to account for this.

24  The prior complaint was premised on the idea that
25  there was going to be a lease agreement.  There's not going

1  to be a lease agreement.  There's going to be a use
2  agreement, a very different type of agreement.  We think that
3  that's a material development that the plaintiffs, if they
4  wish, should decide whether to take into account before we
5  start briefing this issue on the merits and before we start
6  expending the resources of the parties and the Court on this
7  issue.  And this is not something that we have just suddenly
8  come up with, this new ordinance.  In the past few months the
9  very first time we were before you, we said this case is not
10 ready to be decided on the merits because the ordinance does
11 not yet exist and that's a very important development that
12 needs to take place first.
13         We've been up front with the Court about that from
14 day one.  We are now at that point.  We will be -- we
15 anticipate being finished with that process by the end of
16 October and we think at that point it makes sense to come in
17 and set an efficient and prompt schedule for this Court to
18 adjudicate the merits of the case so that everyone can move
19 forward with the OPC.
20         THE COURT:  Counsel, what's the relationship between
21 the track and field and the OPC?
22         MR. WORSECK:  The new track and field is something
23 that is being built as a result of the anticipated OPC
24 displacing an existing track and field that's currently on
25 that site.  The track and field that, independently of the

1  OPC, was ending the -- was nearing the end of its useful
2  life, it was projected to kind of be ready for replacement I
3  think next year.  And so given that the OPC would be
4  displacing that track and field and there was a need to have
5  a track and field according to the Park District's judgment
6  in Jackson Park, it made sense to build a new track and field
7  as part of this.
8           THE COURT:  I specifically asked you:  Well, is it
9  your position that that's not related to the Obama Center,
10 correct?  And you said:  Correct, that's a separate project.
11          And I understand the qualifications that you've made
12 and I read the transcript in its entirety.  I'm just going to
13 say that I found that answer very disappointing and I'm going
14 to want and expect better from counsel going forward.  But
15 I'm also going to say that both sides have been a little fast
16 and loose with the record.  I lifted the stay in August.
17 There's no reason under this Earth why you can't propound
18 discovery.  There's no reason for you to ask me to do that
19 because I already lifted discovery.  And when I deferred MIDP
20 disclosures which wouldn't already -- which wouldn't be
21 triggered until a responsive pleading anyway, I did it at the
22 agreement of the parties; not because they told me that the
23 thing was related or not.  I asked the parties do you want to
24 defer MIDP discovery.  I was happy to have that done on time
25 which again would have been triggered after the responsive

1  pleading.
2      If you want an injunction, I also discussed that on
3  the last time we were here and I said the parties need to
4  meet and confer.  And if you want to file a motion for an
5  injunction, which is not in front of me because there's a
6  rule for that and you're perfectly aware of what the rule is
7  and what the showing needs to be so this is what we're going
8  to do, all dates and deadlines to stand.
9      If you want to propound discovery, go ahead and
10 propound discovery.  If you want to move for an injunction,
11 then do it the right way after you meet and confer which is
12 consistent with the local rules.  An answer is not an
13 adjudication on the merits.  I'm going to have my deadline
14 set and the City Council, as I said on the last court date,
15 it can do whatever it wants to do.  And if that means you
16 have to file an amended answer at some point, fine, we'll
17 take that when we -- we'll cross that bridge whenever we get
18 to it but we're going to get an answer on file because that's
19 the predicate to us doing a dispositive motion schedule.  And
20 if you need discovery in order to respond or file your own
21 dispositive motion, let's go ahead and do that, okay.  You
22 know what the answer is going to look like.  And then when we
23 show up on October 24th, if there's any issues, if you need
24 to amend your answer, if you want to set a dispositive motion
25 schedule, if you want to set even an expert discovery

1  schedule, whatever, but what I'm going to do on the next
2  court date is once I get the pleadings at issue, I'm going to
3  set a case management conference and we're going to have
4  everything set on a very short and efficient and fair
5  schedule, including a trial date, if necessary.
6       Any questions?
7       MR. FIORETTI: Just one, your Honor. I know you
8  said we're in discovery. We probably would like to issue two
9  subpoenas. Would that be permissible? At a minimum --
10      THE COURT: I lifted the stay. You have the entire
11 Rules of Civil Procedure at your displeasure. Go ahead and
12 fire away any kind of discovery you want.
13      MR. FIORETTI: Thank you.
14      THE COURT: Anything else?
15      MR. WORSECK: Your Honor, two points: First of all,
16 your point is taken with respect to the prior colloquy
17 regarding the connection between the track and field and the
18 OPC. With respect, we believe that given the context of the
19 hearing which was not about whether they were related in some
20 sense but whether in having started work on the track and
21 field we had gone back on a promise not to start work on the
22 OPC, we think that it was very clear that those are two
23 separate things for lots of different reasons which we've
24 already put before the Court and I don't want to rehash those
25 now but the position we took on your question at the time, we

1    believe, was in good faith and supported by the facts.
2            THE COURT: Opposing counsel is calling it a
3    misrepresentation. I'm not doing that. I'm just finding it
4    disappointing that there wasn't more clarity and I'll take
5    your representation at face value, counsel, so don't worry
6    about that.
7            MR. WORSECK: Thank you, your Honor.
8            THE COURT: All right. See you on the next court
9    date.
10           MR. WORSECK: Judge, one other --
11           MR. ROTH: Thank you, your Honor.
12           MR. WORSECK: Just one point of clarification --
13           THE COURT: Yes?
14           MR. WORSECK: -- regarding MIDP discovery, it sounds
15   like because we have an answer date of the 22nd, that MIDP
16   would not start at least until some point after that.
17           THE COURT: Currently, there's an oral agreed motion
18   to defer initial MIDP discovery. Do you want to revisit
19   that?
20           MR. WORSECK: No. We believe that MIDP discovery is
21   not appropriate for reasons we've been through before.
22           THE COURT: All right. Do you want to undo that?
23   It's up to you.
24           MR. ROTH: Your Honor, we --
25           THE COURT: Pilot discovery wouldn't be due until

1  after the answer anyway and you have the ability to do
2  attorney-driven discovery now so do you care about that or do
3  you want to revisit it?
4      MR. ROTH:  Well, we're fine with -- we want to issue
5  written discovery.  We're going to do that.  If we can defer
6  the MIDP discovery, that is what it is.  That's fine.
7      THE COURT:  Because the pilot discovery -- and you
8  should know this, it's a door that swings both ways, so
9  you're going to have to comply with that but all of that
10 based on the pilot itself is triggered off through the answer
11 date so none of that will be due until after we meet again on
12 the 24th of October.
13     MR. ROTH:  Yes, sir.  Thank you.
14     MR. WORSECK:  One other point, your Honor, just so
15 everyone is clear here.
16     THE COURT:  No.  Take your time.
17     MR. WORSECK:  We understand your point about
18 non-MIDP discovery.  For the reasons we've talked about
19 already, we think that it is premature to engage in any
20 discovery, whatever the type, because --
21     THE COURT:  I understand those arguments.  I
22 considered them and I lifted the stay on our last court date
23 so discovery is open and you can engage in discovery too if
24 you will.
25     MR. WORSECK:  Right.  And we would reserve all

1  appropriate objections to that discovery.
2         THE COURT:  Well, any discovery comes, that's how it
3  goes.
4         MR. WORSECK:  Right.
5         THE COURT:  You could move for a protective order,
6  you.  Could say it's not proportional.  It's like any other
7  case.  Thank you, counsel.
8         MR. FIORETTI:  Thank you, Judge.
9         MR. ROTH:  Thank you.
10        MR. WORSECK:  Thank you.
11    (Which concluded the proceedings in the above-entitled
12 matter.)
13                      C E R T I F I C A T E
14        I hereby certify that the foregoing is a transcript
15 of proceedings before the Honorable John Robert Blakey on
16 September 20, 2018.
17
18 */s/Laura LaCien*
   _____              September 21, 2018
19 Laura LaCien                                   Date
   Official Court Reporter
20
21
22
23
24
25