IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| Protect Our Parks, Inc.; Charlotte Adelman; Maria Valencia; and Jeremiah Jurevis; <br><br> Plaintiffs, <br><br> v. <br><br> Chicago Park District and City of Chicago, <br><br> Defendants. | No. 18 CV 03424 <br><br> Judge John Robert Blakey |

### DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND, IN THE ALTERNATIVE, RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant City of Chicago ("City"), by its attorneys, Edward N. Siskel, Corporation Counsel for the City, and Mayer Brown, LLP, and Defendant Chicago Park District ("Park District"), by its attorney, Burke, Warren, MacKay & Serritella P.C., respectfully move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss Plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction and, in the alternative, pursuant to Federal Rule of Civil Procedure 12(c), for the entry of judgment on the pleadings for Defendants with respect to the entire Complaint for failure to state a claim upon which relief can be granted. In support of this motion, Defendants state as follows:

1. This lawsuit challenges the transfer of land in Jackson Park from the Park District to the City for use as the site of the Obama Presidential Center ("OPC"), as well as the City's authorization of The Barack Obama Foundation ("Foundation") to operate the OPC on the site. Plaintiffs filed their Complaint on May 14, 2018. Defendants filed their Answer and Affirmative Defenses on October 22, 2018. As Defendants stated in their Answer and Affirmative Defenses, and as explained more fully in Defendants' memorandum in support of this motion ("Defs.'

Mem."), Plaintiffs lack standing to bring any of their claims, and their First Amendment claim is unripe. The Court therefore lacks subject matter jurisdiction and must dismiss the case. See Fed. R. Civ. P. 12(h)(3); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party . . . at any stage in the litigation . . . ."). In addition, and as explained more fully in Defendants' memorandum, the case is ready for resolution on the merits now, and all of Plaintiffs' claims fail as a matter of law, requiring judgment in Defendants' favor. See Fed. R. Civ. P. 12(c) (permitting motion for judgment on the pleadings any time after pleadings have closed so long as motion filed "early enough not to delay trial"); Fed. R. Civ. P. 12(h)(2)(b) (permitting defense of failure to state a claim to be raised by motion under Rule 12(c)).

  2. Both a motion to dismiss for lack of jurisdiction and a motion for judgment on the pleadings are governed by the standard applicable to a Rule 12(b)(6) motion. See Silha v. ACT, Inc., 807 F.3d 169, 174 (7th Cir. 2015) (same standard used for evaluating Rule 12(b)(1) motions and Rule 12(b)(6) motions); Lodholtz v. York Risk Servs. Grp., Inc., 778 F.3d 635, 639 (7th Cir. 2015) (standard governing Rule 12(b)(6) motion governs Rule 12(c) motion). Under that standard, the Court first strips away any conclusory statements in the complaint and considers only "well-pleaded factual allegations." Silha, 807 F.3d at 174. Then the Court determines whether the well-pleaded factual allegations "plausibly suggest a claim of subject matter jurisdiction," id., or – in the Rule 12(c) context – whether those allegations "'state a claim to relief that is plausible on its face,'" Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

  3. As with a Rule 12(b)(6) motion, on a motion to dismiss for lack of subject matter jurisdiction or motion for judgment on the pleadings, the Court may consider not only the

allegations in the complaint, but also "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013); see also N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998) (the pleadings to be considered on Rule 12(c) motion also include exhibits attached to the answer). Where a properly considered exhibit contradicts the allegations in the complaint, the exhibit ordinarily controls. Bogie v. Rosenberg, 705 F.3d 603, 609 (7th Cir. 2013).

4. Defendants hereby request that the Court take judicial notice of the following documents and their contents, which are attached to and discussed in Defendants' memorandum. The documents are as follows:[1]

Exhibit 1: City Ordinance SO2018-123 ("PD Ordinance") (available at http://www.chicityclerk.com/legislation-records/journals-and-reports/journals-proceedings), May 23, 2018 City Council meeting, Vol. 1 of 2, pages **77**185 – 77214)

Exhibit 2: Excerpt of Map of Town of Lake and Hyde Park Township, Township 38 North Range 14 East, Cook County, Illinois ("2009 Map"), Cook County Government, Cook Central (available at https://hub-cookcountyil.opendata.arcgis.com/datasets?content=document&page=3&q=township&t=pdf)

Exhibit 3: Excerpt of 1822 Map of Federal Township Plat, 30-61e ("1822 Map"), US Surveyor General's Records for Illinois, "Federal Township Plats," Record Series 953.012, Illinois State Archives (available at http://landplats.ilsos.net/FTP_Illinois.html)[2]

---

[1] In addition to the documents listed here, Defendants' memorandum contains citations to City Ordinance O2015-192, which is attached as Exhibit A to the Complaint, and the transcript of proceedings from the May 17, 2018 hearing before the Chicago Plan Commission, a copy of which is attached as Exhibit 3 to Defendants' Answer and Affirmative Defenses. Those documents are part of the pleadings, and the Court may consider them in evaluating Defendants' Rule 12(c) motion. See N. Indiana Gun, 163 F.3d at 452.

[2] The map excerpts attached as Exhibits 2, 3 and 4 are taken from publicly available maps on the government websites identified above. The first page of each exhibit is a clean excerpt focusing on "Section 13," the area in which the OPC is located. See Paragraph 7, infra. The second page

3

| | |
|---|---|
| Exhibit 4: | Excerpt of 1834 Map of Federal Township Plat, 30-23 ("1834 Map"), US Surveyor General's Records for Illinois, "Federal Township Plats," Record Series 953.012, Illinois State Archives (available at http://landplats.ilsos.net/FTP_Illinois.html) |
| Exhibit 5: | City Ordinance SO2018-7136 ("Operating Ordinance") (available at http://www.chicityclerk.com/legislation-records/journals-and-reports/journals-proceedings, October 31, 2018 City Council meeting, Vol. 1 of 3, pages 85875 – 85986) |
| Exhibit 6: | Meeting Minutes from the February 11, 2015 Meeting of the Park District Board of Commissioners (available at https://chicagoparkdistrict.legistar.com/Calendar.aspx) |
| Exhibit 7: | Resolution of the Chicago Plan Commission Concerning Application No. 721 ("LPO Resolution") and May 17, 2018 Report from the City's Department of Planning and Development (adopted in LPO Resolution as findings of Plan Commission) |
| Exhibit 8: | Report of Proceedings from the October 11, 2018 Meeting of the City's Committee on Housing and Real Estate |
| Exhibit 9: | July 21, 2014 Letter from Internal Revenue Service to Foundation (available at https://apps.irs.gov/app/eos/ under EIN 46-4950751) |
| Exhibit 10: | 1839 United States Land Patent, Certificate No. 2504 (authorizing sale in 1839 from United States to private purchaser of western half of southwest quarter of Section 13 of Township 38 North Range 14 East) (available at https://glorecords.blm.gov/details/patent/default.aspx?accession=IL0910__.049&docClass=STA&sid=lctd2oja.lzj#patentDetailsTabIndex=1) |
| Exhibit 11: | 1844 United States Land Patent, Certificate No. 1524 (authorizing sale in 1844 from United States to private purchaser of all land in northwest quarter of Section 13 of Township 38 North Range 14 East) (available at https://glorecords.blm.gov/details/patent/default.aspx?accession=IL0730__.450&docClass=STA&sid=lctd2oja.lzj#patentDetailsTabIndex=1) |

---

of each exhibit is the same excerpt, but with a red border around Section 13 for the Court's convenience. The full map from which Exhibit 2 is taken can be viewed by going to https://hub-cookcountyil.opendata.arcgis.com/datasets?content=document&page=3&q=township&t=pdfas and clicking on "Town of Lake and Hyde Park Township, Map 19." The full maps from which Exhibits 3 and 4 are taken can be viewed by going to http://landplats.ilsos.net/FTP_Illinois.html and clicking on "View the Plats," then clicking on Cook County, then placing the cursor over the eastern portion of Lake Township or the northwestern portion of Hyde Park Township, and then clicking on "30-61e" to access the 1822 map or "30-23" to access the 1834 map.

| | |
|---|---|
| Exhibit 12: | March 26, 1929 Use Agreement Between South Park Commissioners and Rosenwald Industrial Museum; September 18, 1929 Supplemental Agreement Between South Park Commissioners and Museum of Science and Industry; and November 7, 1936 Agreement Between Park District and Museum of Science and Industry |
| Exhibit 13: | September 18, 1925 Use Agreement Between Shedd Aquarium Society and South Park Commissioners; August 19, 1987 Second Supplemental Agreement Between Park District and Shedd Aquarium Society; and July 23, 2001 Third Supplemental Agreement Between Park District and Shedd Aquarium Society |
| Exhibit 14: | January 27, 1915 Use Agreement Between South Park Commissioners and Field Museum of Natural History |

5. A court may take judicial notice of any fact that "is not subject to reasonable dispute" either because the fact is generally known within the court's jurisdiction or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The above documents, and their contents, are either matters of common knowledge or are derived from sources whose accuracy cannot reasonably be questioned. In particular, it is well established that information obtained from official government websites is judicially noticeable. See, e.g., Denius v. Dunlap, 330 F.3d 919, 926 (7th Cir. 2003) (district court required to take judicial notice of information from documents posted on official government website). Similarly, "matters of public record such as state statutes, city charters, and city ordinances" are considered "common knowledge" and are therefore also "proper subjects for judicial notice." Newcomb v. Brennan, 558 F.2d 825, 829 (7th Cir. 1977). And the legislative history leading up to public enactments of that sort is also judicially noticeable. See Territory of Alaska v. Am. Can Co., 358 U.S. 224, 227 (1959).

6. The above exhibits fall within these categories of judicially noticeable materials. Exhibits 1-6, and 9-11 are subject to judicial notice because they are official government

documents publicly available on official government websites. Exhibits 1 and 5-8 contain municipal public records or documents pertaining to the historical public governmental proceedings underlying those records and are therefore subject to judicial notice for that reason. Exhibits 12-14 are executed operating contracts between a municipal entity (the predecessor to the Park District) and third-party private organizations that operate long-established museums on parkland. They have been in the Park District's custody for decades and their "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The fact of their existence and their contents are therefore also subject to judicial notice.

    7.    Based on the publicly available government maps listed above, Exhibits 2-4, the Court may also take judicial notice of the following facts, relating to the status of the OPC site as land that was not formerly submerged under the waters of Lake Michigan and later reclaimed by human conduct.[3]

    a.    The OPC site comprises approximately 19.3 acres of land in Jackson Park bounded by South Stony Island Avenue on the west; North Midway Plaisance on the north; South Cornell Drive on the east; and East Hayes Drive on the south. See Ex. 1 to Defs.' Mem., at 77196.[4]

    b.    As shown on Exhibit 2 – a 2009 map maintained by Cook County – the portion of

---

[3] Plaintiffs make no well-pleaded allegations to the contrary. They assert only, "on information and belief," that "*Jackson Park . . .* is on formerly submerged land." Compl. ¶ 45 (emphasis added). They make no allegations about the status of the specific parcel of land that will be the site of the OPC, and in any event, their conclusory assertion is not a well-pleaded allegation of fact under Twombly and is not entitled to any credence. Cf. Twombly, 500 U.S. at 557 (declining to accept truth of conclusory assertion, made "upon information and belief" and unsupported by specific allegations of fact, that defendants entered into conspiracy).

[4] The site may also be viewed on the City's Zoning Map website by searching for "PD1409" in the search bar in the site's upper-left corner. See City of Chicago, Zoning and Land Use Map, https://gisapps.cityofchicago.org/ZoningMapWeb/?liab=1&config=zoning.

Jackson Park comprising the site described above falls within Section 13 of Township 38 North, Range 14 East. Those are demarcations of the Rectangular Survey System, also known as the Public Land Survey System ("PLSS"). The PLSS is a standard method for subdividing and describing land nationwide. Under the PLSS, a county is divided into "townships," which are six-miles square, each of which is subdivided further into 36 one-square mile "sections," which can be subdivided further into halves, quarters, and quarters of quarters. See generally U.S. Geological Survey, The Public Land System, https://nationalmap.gov/small_scale/a_plss.html; Office of the Illinois Sec'y of State, Federal Township Plats of Illinois (1804-1891): Rectangular Survey System, http://landplats.ilsos.net/FTP_Illinois.html.

c. The OPC site is located along the western edge of Section 13 and is entirely within the western halves of the southwest and northwest quarters of Section 13 ("Far West Section 13"). See Ex. 2 to Defs.' Mem.[5] This is evident from the fact that the OPC site's eastern boundary (Cornell Drive) is west of the Western Lagoon in Jackson Park, which is itself located in the western half of the southwest quarter of Section 13. See id.

d. At least as of 1822, the western halves of the northwest and southwest quarters of Section 13 (i.e., Far West Section 13) were land, and were not submerged under Lake Michigan, as shown by an 1822 map created by the United States Surveyor General and maintained as a public record by the Illinois State Archives. See Ex. 3 to Defs.' Mem. Based on that map, it is indisputable that Far West Section 13 – and indeed, the entire southwest quarter of Section 13 – were not submerged under Lake Michigan in 1822 and,

---

[5] The OPC site is almost entirely within the western half of the southwest quarter; only the northernmost tip of the site is within the northwest quarter.

7

thus, at all relevant times. (Illinois was founded in 1818.)

e. Further, another map created in 1834 by the United States Surveyor General and held as a public record by the Illinois State Archives also shows that the western halves of the northwest and southwest quarters of Section 13 were not submerged as of that date. See Ex. 4 to Defs.' Mem.

f. The Court may take judicial notice of these facts, which are apparent from the cited maps. See Hoyt v. Russell, 117 U.S. 401, 405 (1886) (taking judicial notice of approximate distances based on government maps marked by public surveys); Cloe v. City of Indianapolis, 712 F.3d 1171, 1177 (7th Cir. 2013) (taking judicial notice of, and drawing distances estimates from, images available on Google Maps), overruled on other grounds by Ortiz v. Werner Enterprises, Inc., 834 F.3d 760 (7th Cir. 2016).

Accordingly, because these judicially noticeable facts clearly show that the OPC site is not reclaimed land that was formerly submerged under Lake Michigan, the Court should take judicial notice of this fact.

8. Should the Court determine that any of the materials submitted by Defendants constitute matters outside the pleadings that are not subject to judicial notice, the Court may convert Defendants' motion to a Rule 56 motion for summary judgment. Defendants would have no objection to such a conversion, provided that the parties would be given reasonable opportunity to present all material pertinent to the motion. See Fed. R. Civ. P. 12(d). Defendants also note that the Court need only address the issue of whether Defendants' attached exhibits are properly considered on a Rule 12(c) motion in the event that the Court denies Defendants' motion to dismiss for lack of subject matter jurisdiction.

**WHEREFORE**, and for the reasons stated more fully in Defendants' memorandum in

support, Defendants respectfully request that the Court dismiss Plaintiffs' complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, to grant judgment on the pleadings for Defendants with respect to Plaintiffs' entire complaint, pursuant to Federal Rule of Civil Procedure 12(c), and grant Defendants such further relief as the Court deems just and appropriate.

| | |
|---|---|
| Date:   November 21, 2018 | Respectfully submitted, |
| BURKE, WARREN, MACKAY & SERRITELLA, P.C.<br>Counsel for the Chicago Park District | EDWARD N. SISKEL<br>Corporation Counsel for the City of Chicago |
| By:   /s/ Joseph P. Roddy | By:   /s/ Andrew Worseck |
| Richard W. Burke<br>Joseph P. Roddy<br>Elizabeth Meyer Pall<br>Susan M. Horner<br>Burke, Warren, MacKay & Serritella, P.C.<br>330 North Wabash Avenue, Suite 2100<br>Chicago, Illinois 60611<br>(312) 840-7000<br>Attorneys for Defendant Chicago Park District | John Hendricks<br>Deputy Corporation Counsel<br>Andrew W. Worseck<br>Chief Assistant Corporation Counsel<br>Justin Tresnowski<br>Assistant Corporation Counsel<br>City of Chicago, Department of Law<br>Constitutional and Commercial Litigation Division<br>30 North LaSalle Street, Suite 1230<br>Chicago, Illinois 60602<br>(312) 744-6975 / 4-7129 / 4-4216<br>Attorneys for Defendant City of Chicago |
| | Michael A. Scodro<br>Britt M. Miller<br>Jed W. Glickstein<br>Mayer Brown LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>(312) 782-0600 (Telephone)<br>(312) 701-7711 (Facsimile)<br>Attorneys for Defendant City of Chicago |