IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROTECT OUR PARKS, INC., ) <br> CHARLOTTE ADELMAN, ) <br> MARIA VALENCIA, and ) <br> JEREMIAH JUREVIS ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CHICAGO PARK DISTRICT and ) <br> CITY OF CHICAGO, ) <br> ) <br> Defendants. ) | Case No. 18 C 3424 <br><br> Judge John Robert Blakey |

## DEFENDANTS' MOTION TO STAY DISCOVERY

Defendant City of Chicago ("City"), by its attorneys, Edward N. Siskel, Corporation Counsel for the City, and Mayer Brown LLP and Defendant Chicago Park District ("Park District"), by its attorneys, Burke, Warren, MacKay & Serritella P.C., hereby respectfully move, pursuant to Fed. R. Civ. P. 26(c), for an order staying discovery in this matter pending resolution of Defendants' Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings ("Dispositive Motion"), filed today. In support of this motion, Defendants state as follows:

1. Discovery should be stayed for two reasons. First, as explained in Defendants' memorandum in support of their Dispositive Motion ("Mem."), the Court lacks jurisdiction over Plaintiffs' claims. Second, and as also explained in Defendants' memorandum, the merits of Plaintiffs' claims can be resolved now as matter of law, without further factual development. At base, the Complaint challenges the legality of the Park District's transfer of the Jackson Park site to the City, and the City's authorization of The Barack Obama Foundation ("Foundation") to

operate the Obama Presidential Center ("OPC") on that site. See Compl. ¶ 1; Ex. 1 (July 5, 2018 Transcript of Proceedings) at 5 (Plaintiffs' counsel explaining that "[a]ll of our causes of action relate to that essential transaction"). No discovery is needed to resolve these issues. Rather, they can be resolved based on the pleadings and judicially noticeable documents – including the terms of the official City Council ordinances, including the Use Agreement, authorizing the Foundation to use the Jackson Park site, and governing how the Foundation will be permitted to operate the OPC on that site, as well as maps reflecting the status of that site. These official documents definitively state the City's and the Foundation's legal rights and responsibilities – terms that cannot be altered except by subsequent official actions by the City Council; thus, materials beyond those described above are extraneous and irrelevant to Plaintiffs' claims.

2. "Courts have considerable discretion in managing the timing of discovery." Dillinger, L.L.C. v. Electronic Arts, Inc., 2010 WL 1945739, at *1 (S.D. Ind. May 11, 2010) (citations omitted). While the filing of a dispositive motion does not automatically stay discovery, "postponement of discovery may be appropriate" and such stays are "granted with substantial frequency." In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 331, 336 (N.D. Ill. 2005). Importantly, "[a] stay of discovery is often appropriate where a pending dispositive motion can resolve the case and where requested discovery is unlikely to produce facts necessary to defeat the motion," 6100 Pacific, LLC v. CWI, Inc., 2018 WL 3127175, at *1 (S.D. Ind. Mar. 16, 2018) (quotation marks omitted) (granting stay of discovery pending ruling on motion for judgment on the pleadings), or where "the motion to dismiss can resolve a threshold issue such as jurisdiction [or] standing," DSM Desotech Inc. v. 3D Sys. Corp., No. 08 CV 1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008). See also Brown-Bey v. United States, 720 F.2d 467, 470-71 (7th Cir. 1983) (affirming district court's decision to rule on merits of petitioner's claims

before allowing requested discovery). And staying discovery during the pendency of a dispositive motion is consistent with "the Supreme Court's recent adoption of a more rigorous pleading standard [in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)] to spare defendants the costs of discovery into meritless claims." Dillinger, L.L.C., 2010 WL 1945739, at *1.

**I.      Attorney-Driven Discovery Should Be Stayed.**

3.      Over the past month, Plaintiffs have issued interrogatories and two sets of requests for production – totaling 64 separate document requests – to each Defendant. See Exs. 2 & 3 (interrogatories); Exs. 4-7 (document requests).[1] This discovery should be stayed because the Court lacks subject matter jurisdiction over the case due to Plaintiffs' lack of standing. See Mem., Part I; DSM Desotech Inc., 2008 WL 4812440, at *2. Moreover, discovery is not necessary to resolve this case. All of Plaintiffs' claims and Defendants' affirmative defenses can and should be resolved on the pleadings, because each claim turns on legal authority, statutes, ordinances, or judicially-noticeable material, as explained below.

4.      Standing: As Defendants' memorandum explains, even though Plaintiffs' status as public trust beneficiaries may give them standing to sue under *Illinois* law, federal law is clear that this status does not give them standing to sue in federal court, because it is an interest held by all Illinois residents, and therefore gives rise to, at most, a mere generalized grievance. Mem., Part I. Defendants' standing argument raises a pure question of law – whether Plaintiffs' status as public trust beneficiaries under state law suffices for Article III standing in federal court.

---

[1] These requests are extremely broad, burdensome, or irrelevant. For instance, Plaintiffs seek "*[a]ll* documents, including but not limited to communications," between Defendants and the Foundation regarding the OPC; between Defendants and the University of Chicago regarding the OPC; and between the City and Park District regarding the OPC. See Exs. 4 & 5 (Request Nos. 51, 52, 53) (emphasis added). Plaintiffs also seek "[a]ll documents related to the Department of Homeland Security providing security for the OPC." Id. (Request No. 45).

3

Nothing about Defendants' standing argument turns on Plaintiffs' particular circumstances or other facts.

5. <u>Due Process</u>: In Count I, Plaintiffs allege that locating the OPC in Jackson Park violates the federal Due Process Clause because the Park District's transfer of the Jackson Park site to the City, and the City's agreement that the Foundation will build and operate the OPC, are unauthorized under the Illinois Constitution and state statutes. The claim thus raises pure issues of law: Whether Defendants' official municipal resolutions and ordinances authorizing the land transfer and the agreement with the Foundation violate Illinois law and, if so, whether a violation of Illinois law amounts to a violation of federal due process rights; and regardless, whether Plaintiffs have a property interest that is protected by due process. <u>See</u> Mem., Part II.A. These issues do not require factual development; they present pure issues of law that can be resolved now.

6. <u>First Amendment</u>: In Count VI, Plaintiffs complain that the OPC will be used for partisan political activity, and that residents with contrary views will be compelled to support the activity nonetheless through paying a tax under the Illinois Park District Aquarium and Museum Act, 70 ILCS 1290/0.01 <u>et</u> <u>seq</u>. ("Museum Act"). Again, no discovery is necessary to resolve this claim. As Defendants explain, the claim is unripe because it will be years before the OPC opens and any expressive activity takes place. <u>See</u> Mem., Part II.B. Further, the two premises of the claim are incorrect under the laws that apply to the Foundation: First, the Use Agreement and the Foundation's 501(c)(3) status will prohibit the OPC from being used for partisan political activity, so the claim that this will occur is nothing more than speculation that the Foundation will violate the law, . Second, any tax collected under the Museum Act will not and cannot be used for the OPC because, under the terms of that statute, such taxes can only be

4

used for museums on land controlled by the Park District, which will not be the case here. See id. These issues do not require discovery. And even assuming both that the OPC would be used as Plaintiffs fear, and that Museum Act taxes would be used to support the OPC, the ultimate merits question posed by Count VI – whether the government violates the First Amendment when tax funds are used to support an enterprise that may happen to express controversial views – can also be resolved now as a matter of law; as Defendants explain, the law is clear that there would be no First Amendment violation. See id.

   7. Public Trust: In Count II, Plaintiffs claim that locating the OPC on the Jackson Park site will violate a state-law public trust that requires Jackson Park to remain open parkland. This claim can be resolved based solely on the Museum Act's textual authorization of presidential centers – a pure statutory construction issue that requires no discovery. See Mem., Part III. Even if it were necessary to consider additional factors, no discovery would be necessary. The Illinois Supreme Court's decision in Friends of the Parks v. Chicago Park District, 203 Ill. 2d 312 (2003) ("FOP"), indicates that, beyond the text of the Museum Act, two additional factors may be relevant: Whether the City owns and controls the OPC site, and whether the OPC will benefit the public. See id. at 327-28. The decision makes clear that, to resolve these issues, a court need only consider the official documents governing the project. See id. at 327 (resolving claim based on review of "the Act, the implementing agreements, [and] the project documents"). Indeed, although the plaintiffs in FOP had introduced expert testimony supposedly rebutting the anticipated public benefits from the project at issue in that case (renovations to Soldier Field and surrounding parkland), the trial judge held that this testimony was "irrelevant," because courts are not to "inquir[e] into the merits or accuracy of the legislative findings." Id. at 319-20.

5

8. This rule makes sense, because documents and information beyond the official, legal documents that define the terms and conditions governing the ownership and use of a project site are irrelevant and extraneous in deciding issues of ownership, control, and public interest. It is the official, legal documents that bind the private entity's conduct and definitely establish what it can and cannot do, and where and how it can conduct its activities. Here, those documents are the City ordinances governing the OPC and the terms of the Use Agreement. The terms of those documents establish each party's respective ownership and control rights and responsibilities as to the Jackson Park site. They also set forth how the OPC will be built and used, thereby allowing the Court to determine whether and how the OPC as authorized will benefit the public. Assessing the OPC's public benefits does not turn on any facts beyond this, as the public purpose of a project is to be discerned based on the legislation "as enacted and not with speculative considerations of legislative wisdom." <u>FOP</u>, 203 Ill. 2d at 327-28 ( quotation marks omitted); <u>see</u> <u>also</u> <u>Sprague v. Brook</u>, 149 F.R.D. 575, 577 (N.D. Ill. 1993) (staying discovery where plaintiffs' claim centered on whether an agency action violated applicable law, as "the primary dispute relates to the interpretation to be afforded certain provisions of FEPCA, and that interpretation will not be aided through the discovery now proposed by the plaintiffs"). Moreover, in this case, the public benefit issue has already been resolved as a matter of state law by the Illinois General Assembly, which found, in the Museum Act, that presidential centers "serve valuable public purposes, including . . . furthering human knowledge and understanding, educating and inspiring the public, and expanding recreational and cultural resources and opportunities." 70 ILCS 1290/1. Under the Illinois law governing Plaintiffs' public trust claim, it "is for the legislature and not the courts" to make this determination. <u>FOP</u>, 203 Ill. 2d at 328.

9. <u>Ultra vires</u>: Count III alleges that the Park District's transfer of parkland to the City for use as the OPC is <u>ultra vires</u> under state law. This claim raises purely legal questions – namely, whether the text of the Illinois Constitution and state statutes permit or restrict the transfer. No discovery is necessary for this claim.

10. <u>Retroactivity</u>: Count IV seeks a declaration that the 2016 Amendment to the Museum Act – which added language expressly identifying presidential centers as a type of museum authorized by the Act – is "inapplicable" because its substance cannot be made retroactive. As Defendants explain, there is no retroactivity issue in this case posed by the 2016 Amendment because the operative governmental transactions occurred *after* the 2016 Amendment. <u>See</u> Mem., Part V. But even if Defendants are wrong about this, whether the text of the 2016 Amendment should be construed as adding new substance to the Museum Act, and if so, whether that substance can have retroactive effect, are purely legal issues that turn on construction of the amendment's text. <u>See</u> <u>id.</u>

11. <u>Special Legislation</u>: Count V seeks to void the 2016 Amendment under the Illinois Constitution's special legislation clause, which prohibits a "special or local law when a general law is or can be made applicable." Ill Const. 1970, art. IV, § 13. This claim turns on purely legal questions: Whether the text of the 2016 Amendment creates a classification that triggers review under the special legislation clause, and whether, if so, that classification is lawful. <u>See</u> Mem., Part VI. The first question is an issue of pure statutory construction, and the second is analyzed under the rational basis standard, which does not turn on record facts because a statute's rationality is "not subject to courtroom fact finding." <u>People ex rel. Lumpkin v. Cassidy</u>, 184 Ill. 2d 117, 124 (1998).

12. Plaintiffs themselves have recognized that discovery is unnecessary to resolve the merits of their claims. At the July hearing, Plaintiffs' counsel stated that "I think [the complaint] could be resolved on the law" and that, while he did not want to foreclose the possibility of discovery, he "[didn't] see any discovery at this point in time" and "believe[ed] that the facts are what the facts are." Ex. 1 at 11. Plaintiffs later stated that "[t]he Complaint is based upon existing Constitutional and related statutory laws, and what are undisputed facts." Dkt. No. 23, ¶ 7. The only material development since these statements is that the City enacted the Operating Ordinance, which contains the terms of the Use Agreement that will govern the OPC. But that does not make discovery any more necessary than it was before. To the contrary: The Operating Ordinance *eliminated* any conceivable issues regarding the OPC's operations by providing the last – and most comprehensive – piece of municipal authorization addressing the Foundation's use of the OPC site.

13. For all of these reasons, the Court should stay attorney-driven discovery.[2]

## II. MIDP Discovery Should Be Stayed.

14. MIDP discovery has commenced in this case, and Defendants are tendering their initial MIDP disclosures on November 21 (today), as ordered by the Court in its October 24 order. See Dkt. No. 40. But all further MIDP discovery should be stayed because Plaintiffs lack Article III standing. See Mem., Part I. The Court therefore lacks subject-matter jurisdiction. The Northern District of Illinois' Standing Order Regarding the Mandatory Initial Discovery Pilot Project ("Standing Order") allows the Court to stay MIDP discovery when the Court's subject matter jurisdiction is in question. To be sure, the Standing Order ties the authorization to

---

[2] It is also appropriate to stay attorney-driven discovery because, under Paragraph A(1)(a) of the Northern District of Illinois' Standing Order Regarding the Mandatory Initial Discovery Pilot Project, such discovery is not to commence until after mandatory discovery is completed. Mandatory discovery has not been completed in this case, and Defendants seek to stay it.

defer MIDP discovery to deferral of the time to answer: Under Paragraph A(3), the lack of subject matter jurisdiction allows the Court to defer the answer, and it is deferral of the answer that postpones commencement of MIDP discovery, since, under Paragraph A(4), the timeline for MIDP disclosures does not begin to run until the answer is filed. But the upshot of Paragraphs A(3) and A(4) is that a defendant may be spared from having to engage in costly and time-consuming mandatory discovery in a case where jurisdiction is lacking.

15.     The fact that Defendants have filed an answer should not preclude Defendants from seeking deferral of MIDP discovery based on a lack of subject matter jurisdiction. Defendants filed their answer, rather than a dispositive motion, according to the schedule ordered by the Court, and waited to file their dispositive motion until after the ordinance authorizing the City to enter into the challenged transaction with the Obama Foundation – the Operating Ordinance – was voted upon. See Ex. 8 (October 24, 2018 Transcript) at 4-5. Filing an answer does not impact whether the Court has subject matter jurisdiction, nor does it minimize the discovery burdens that the MIDP poses – and there is thus no reason for MIDP discovery to progress beyond what has occurred. Filing the answer has also not prejudiced Plaintiffs; indeed, it has helped them, by alerting them to Defendants' position regarding their allegations.

**III.    Staying Discovery Will Not Prejudice Plaintiffs.**

16.     Plaintiffs will not be prejudiced by staying discovery pending resolution of Defendants' Dispositive Motion. If the Court grants that motion, the case will be over. And if the Court denies the motion, discovery can proceed at that point.

17.     Defendants have conferred in good faith with Plaintiffs regarding the relief requested in this motion. On November 15, counsel for the City spoke via telephone with Plaintiffs' counsel regarding a stay of discovery. Plaintiffs' counsel indicated that Plaintiffs

would be likely to oppose a stay, and that, after conferring with Plaintiffs, he would contact the City's counsel if Plaintiffs ended up taking a different position. As of the time of the filing of this motion, Plaintiffs had not contacted Defendants.

## CONCLUSION

For the foregoing reasons, the Court should stay discovery pending resolution of Defendants' Dispositive Motion.

| | |
|---|---|
| Date: November 21, 2018 | Respectfully submitted, |
| BURKE, WARREN, MACKAY & SERRITELLA, P.C.<br>Counsel for the Chicago Park District | EDWARD N. SISKEL<br>Corporation Counsel for the City of Chicago |
| By: /s/ Joseph P. Roddy | By: /s/ Andrew Worseck |
| Richard W. Burke<br>Joseph P. Roddy<br>Elizabeth Meyer Pall<br>Susan M. Horner<br>Burke, Warren, MacKay & Serritella, P.C.<br>330 North Wabash Avenue, Suite 2100<br>Chicago, Illinois 60611<br>(312) 840-7000<br>Attorneys for Defendant Chicago Park District | John Hendricks<br>Deputy Corporation Counsel<br>Andrew W. Worseck<br>Chief Assistant Corporation Counsel<br>Justin Tresnowski<br>Assistant Corporation Counsel<br>City of Chicago, Department of Law<br>Constitutional and Commercial Litigation Division<br>30 North LaSalle Street, Suite 1230<br>Chicago, Illinois 60602<br>(312) 744-6975 / 4-7129 / 4-4216<br>Attorneys for Defendant City of Chicago<br><br>Michael A. Scodro<br>Britt M. Miller<br>Jed W. Glickstein<br>Mayer Brown LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>(312) 782-0600 (Telephone)<br>(312) 701-7711 (Facsimile)<br>Attorneys for Defendant City of Chicago |