# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Protect Our Parks, Inc.; Charlotte Adelman; )<br>Maria Valencia; and Jeremiah Jurevis;  )<br>          )<br>          Plaintiffs,  )<br>          )          No.  18 CV 03424<br>     v.     )<br>          )<br>Chicago Park District and City of Chicago,  )          Judge John Robert Blakey<br>          )<br>          Defendants.  ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO**
**DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

# INTRODUCTION[1]

Plaintiffs lack Article III standing to bring any of their claims because they assert no concrete and particularized injury they will suffer as a result of the OPC being built on the western edge of Jackson Park. As Defendants demonstrated in their Memorandum In Support Of Their Motion To Dismiss For Lack Of Subject Matter Jurisdiction And, In The Alternative, For Judgment On The Pleadings ("Mem."), Plaintiffs' status as public trust beneficiaries under state law does not confer *federal* standing because it is a diffuse interest shared by all Illinois residents. Similarly, their alleged tax payment to the Park District under the Museum Act is too generalized to support Article III standing, and, regardless, no Museum Act tax revenue collected by the Park District will be spent on the OPC.

Perhaps recognizing these shortcomings, Plaintiffs, in their Response, assert two new standing theories: (1) that Plaintiffs' status as *City* taxpayers provides standing because the *City* will use tax revenue to support the OPC, and (2) that the OPC will cause aesthetic and environmental harm to Jackson Park. But their new "City taxpayer theory" fails because Plaintiffs do not identify any City expenditure that will be used to support allegedly illegal activity. Rather, construction and operation of the OPC will be paid for by the Foundation. And the environmental harm theory fails due to the same defect as the public trust theory, because Plaintiffs fail to identify any way in which locating the OPC on a portion of Jackson Park will inflict a particularized and concrete injury on any Plaintiff.

Finally, Plaintiffs' First Amendment claim is non-justiciable on the additional ground that

---

[1] Defendants have moved to dismiss for lack of jurisdiction and for judgment on the pleadings. Dkt. 48. Pursuant to this Court's order of January 22, 2019 converting the motion for judgment on the pleadings to a motion for summary judgment (Dkt. 79), Defendants submit this reply in support of their jurisdictional arguments only (Mem. at 14-16, 19-20), and reserve their reply in support of their merits arguments for subsequent briefing.

it is unripe. It relies on speculation that the Foundation will, years in the future after the OPC opens, use the OPC as a site for improper political advocacy. But federal law and the Use Agreement squarely prohibit such activity. Plaintiffs' speculation that the Foundation may violate these prohibitions at some future time cannot support a cause of action now.

For these and other reasons discussed below, the Court should grant Defendants' motion to dismiss for lack of subject matter jurisdiction.

## I. Plaintiffs Lack Article III Standing.

### A. Plaintiffs' claimed beneficial interest in a state-law public trust does not confer federal standing.

Even if Plaintiffs are, as Illinois citizens, generic beneficiaries of a public trust under Illinois law, this communal status does not give them standing to sue in federal court because their interest is too diffuse and generalized to constitute the particularized and concrete injury required under Article III. See Mem. at 14-15. Federal courts have long refused "to serve as a forum for generalized grievances." Lance v. Coffman, 549 U.S. 437, 439 (2007); see also, e.g., Lujan v. Defs. of Wildlife, 504 U.S. 555, 573–74 (1992) (plaintiff "seeking relief that no more directly and tangibly benefits him than it does the public at large . . . does not state an Article III case or controversy").

Plaintiffs concede that their alleged interest as public trust beneficiaries is common to "each citizen or taxpayer of Illinois." Resp. at 13. Nonetheless, Plaintiffs contend that they have federal standing because Illinois decisions have recognized a citizen's beneficial interest in a public trust as a basis for standing to sue in Illinois state court. See Resp. at 13–14 (citing Paepcke v. Public Bldg. Com., 46 Ill. 2d 330, 341–42 (1970), and Fiala v. Wasco Sanitary Dist., 2014 IL App (2d) 130253-U, ¶ 14). But as Defendants already have shown, it is well established that standing to sue in *state* court does not equate to standing to sue in *federal* court. See Mem.

2

at 14-15 (discussing Hollingsworth v. Perry, 570 U.S. 693 (2013), and Illinois ex rel. Ryan v. Brown, 227 F.3d 1042, 1045 (7th Cir. 2000)). Paepcke and Fiala therefore cannot form the basis for Article III standing in this federal litigation.

Plaintiffs have no answer to this foundational legal principle. They argue that Hollingsworth is distinguishable because there, the parties seeking standing were asserting the rights of third-parties, while here Plaintiffs are "asserting their own rights." Resp. at 14 n.8. But this misreads Hollingsworth. Proponents of the ballot initiative in that case did indeed assert their own rights, based on their special role in the California ballot initiative process. See Hollingsworth, 570 U.S. at 706. Only *after* concluding that their state-law status did not confer federal standing to press their own rights did the Court consider whether the proponents had standing to assert the rights of third parties. See id. None of this affects Hollingsworth's core holding: that standing in state court does not equate to standing in federal court. And Plaintiffs do not even try to distinguish the Seventh Circuit's decision in Brown, which rejected federal standing for plaintiffs who, like Plaintiffs here, brought suit "in their capacity as taxpayers and citizens of the State of Illinois" and thus could only claim a generalized grievance. 227 F.3d at 1043.

Plaintiffs cite the district court decisions in Lucas in support of their standing argument.[2] But the standing arguments that Defendants make here were not made by the parties or addressed by the court in Lucas. Rather, Defendants' sole standing argument in Lucas was that Plaintiffs' claims were contingent, and therefore insufficient to provide standing, because final City action

---

[2] Only the first Lucas decision dealt with the standing issue. See Friends of the Parks v. Chicago Park Dist., 2015 WL 1188615, at *3 (N.D. Ill. Mar. 12, 2015) ("Lucas I"). The Defendants in Lucas did not argue lack of standing in their second motion to dismiss, and the court's second decision did not address it. See Friends of the Parks v. Chicago Park Dist., 160 F. Supp. 3d 1060 (N.D. Ill. 2016) ("Lucas II").

3

to authorize the museum had not occurred. See Lucas I, Def. City of Chicago's Mem. in Supp. of its Mot. to Dismiss Pls.' Compl., Dkt. 20, attached hereto as Exhibit A, at 6–7. Accordingly, the district court in Lucas was not asked to consider the standing argument Defendants make here – that a generalized, state-law beneficial interest in public trust land is not a sufficiently particularized and concrete injury for Article III standing.

Indeed, if Lucas had addressed and rejected the standing argument Defendants raise here, the court could have reached the result it did only by breaking squarely from controlling federal authority. As Defendants have already explained, see Mem. at 15 n.4, the Lucas court found federal standing based solely on the plaintiffs' claimed status as public trust beneficiaries under Illinois law, precisely the reasoning that Hollingsworth and Brown forbid. But because Defendants' argument in Lucas was different than their argument here, Hollingsworth and Brown – and the critical holding that state-law standing is insufficient to confer Article III standing – were not brought to the Lucas court's attention  The court's opinion thus did not address, much less distinguish, those cases.

Finally, the other two federal cases Plaintiffs cite – Booth v. Lemont Mfg. Corp., 440 F.2d 385, 386 n.2 (7th Cir. 1971) (discussing standing requirement in Illinois state courts); and Lake Michigan Fed'n v. U.S. Army Corps of Eng'rs, 742 F. Supp. 441 (N.D. Ill 1990) (no discussion of standing) – did not even address Article III standing. Accordingly, they cannot support standing here. Cf. Hibbs v. Winn, 542 U.S. 88, 126–27 (2004) (prior exercise of jurisdiction in case where jurisdiction was not questioned is not binding on subsequent courts). That is particularly true because Booth and Lake Michigan Fed'n significantly predate both Brown and Hollingsworth, which conclusively demonstrate that Plaintiffs' status as public trust beneficiaries under state law does not support Article III standing in federal court.

### B. Plaintiffs' alleged status as City taxpayers does not confer standing.

Plaintiffs have abandoned the taxpayer theory of standing they alleged in their complaint and have crafted, as an attempted substitution, a new theory of taxpayer standing, based on their status as City taxpayers (even though Plaintiff Adelman is a resident of Wilmette).[3] To assert standing, a municipal taxpayer must "bring 'a good-faith pocketbook action.'" Clay v. Fort Wayne Cmty. Sch., 76 F.3d 873, 879 (7th Cir. 1996). This means the taxpayer must (1) identify a particular "disbursement of [municipal] funds" that (2) constitutes "an illegal use of tax revenues." Id.; see also Reich v. City of Freeport, 527 F.2d 666, 670 (7th Cir. 1975) (municipal taxpayer standing does not exist without a "logical nexus between the taxpayer status and the 'incidental expenditure of tax funds'") (quoting Flast v. Cohen, 392 U.S. 83, 102 (1968)). Plaintiffs do not come close to meeting that test, for several reasons.

First, the activities that Plaintiffs challenge as illegal – the construction of the OPC and its alleged use for partisan political purposes – fail the first part of the Clay test, because Plaintiffs cannot identify any City expenditures that will be used to fund *those* activities. As Defendants have explained, Foundation funds, not City funds, will pay for the OPC's construction and ongoing operations. See Mem. at 9.[4]

Aiming to avoid this fundamental defect in their theory, Plaintiffs cite three categories of

---

[3] The Complaint claims standing arises because Plaintiffs would allegedly pay a "Museum Act" tax to the *Park District* that would be used to support the OPC. See Compl. ¶¶ 7, 119-20. As Defendants explained, however, taxes collected pursuant to the Museum Act will not, by law, be used to fund the OPC, because the Park District will not own or control the OPC site. See Mem. at 16. Plaintiffs do not dispute this point in their Response and have abandoned this argument.

[4] Because no tax funds will be used to support future expressive activities at the OPC, this case is distinguishable from O'Brien v. Vill. of Lincolnshire, No. 18-CV-01310, 2018 WL 6433852, at *5 (N.D. Ill. Dec. 7, 2018). In O'Brien, the municipality granted tax revenue directly to a lobbying organization to fund its ongoing lobbying and other political activities. No such direct funding of ongoing expressive activity is at issue here.

5

funds that the City will allegedly spend *not* on the OPC's actual construction or operations, but on other items with a purported connection to the OPC: (1) environmental remediation costs for the OPC site, (2) funding for alterations to roadways surrounding the site, and (3) funds to install a new track and field facility on parkland adjacent to the site. But this argument fails the second element of the Clay analysis, for Plaintiffs do not (and cannot) claim that any of these alleged expenditures constitutes an inherently unlawful use of tax revenue. It is not illegal for the City to pay to clean up environmental conditions on parkland, to rearrange roadways in public parks, or to build a new track and field on parkland – and Plaintiffs do not even attempt to say that it is. And as to the conduct that Plaintiffs claim *will be* unlawful – the construction of the OPC and its alleged use for improper political advocacy – these three categories of expenditures will not be used: they are not expenditures for the construction and operation of the OPC, which will be paid for by the Foundation. Plaintiffs' inability to tether the alleged City expenditures to any unlawful activity is fatal under Clay, because proper use of tax revenue does not create taxpayer injury.[5]

      The Seventh Circuit has made it clear that without plausible allegations that any City tax money has been or will be spent on the purportedly unlawful activity, Plaintiffs' "status as . . . municipal taxpayer[s] is irrelevant for standing purposes." Freedom From Religion Found., Inc. v. Zielke, 845 F.2d 1463, 1470 (7th Cir. 1988); see id. (municipal taxpayers lacked standing to challenge religious display in public park, even though municipality spent taxpayer money on the park, because taxpayer money was not used to fund the display, specifically); Am. Civil Liberties Union of Ill. v. City of St. Charles, 794 F.2d 265, 267–68 (7th Cir. 1986) (municipal

---

[5] In any event, Plaintiffs do not establish that these alleged expenditures would deplete the City treasury, resulting in an "increase to a [Plaintiffs'] tax bill to make up a deficit." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 344 (2006).

taxpayers lacked standing to bring Establishment Clause challenge to lighted cross on public building where city incurred expenses to maintain cross-bar holding display but did not pay to light the cross itself). For these reasons, Plaintiffs lack standing as City taxpayers.

### C. Plaintiffs' allegations of aesthetic or environmental harm to Jackson Park do not confer standing.

Plaintiffs' final standing theory is based on alleged "[a]esthetic and [e]nvironmental [h]arm to Jackson Park." Resp. at 14. But here too, Plaintiffs fail to identify any concrete and particularized injury sufficient to show standing. In fact, the very case on which Plaintiffs rely, Sierra Club v. Morton, 405 U.S. 727 (1972), defeats their new, unpled argument.

There, the Sierra Club challenged the development of a ski resort in a mountain valley, claiming that the development would change the valley's use and alter "the aesthetics and ecology of the area." Id. at 734. The Supreme Court recognized that the Sierra Club "is a large and long-established organization, with a historic commitment to the cause of protecting our Nation's natural heritage from man's depredations." Id. at 739. Even so, the Sierra Club lacked standing because it did not establish that it or its members "would be affected in any of their activities or pastimes" by the development or that its members actually used the valley "for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions." Id. at 735. The Court explained that standing based on "[a]esthetic and environmental well-being" exists only when a plaintiff suffers a particularized and concrete injury – that is, when he is "himself among the injured." Id. at 734-35. In short, general dismay that a piece of property will be used in a way that Plaintiffs take issue with is insufficient to confer Article III standing.

General dismay is all Plaintiffs allege here, and they therefore fail the Sierra Club test. Plaintiffs do not allege – in their Complaint or their Response – that any of them (or any Protect

7

Our Parks members) would suffer individual injury because their use of the 19-acre OPC site will be compromised in a legally cognizable way. The site consists of general parkland – open grassy space, some trees, a track and field, and a playground – on the western edge of Jackson Park, isolated by busy roads, and Plaintiffs do not identify any specific aesthetic or environmental feature on the site that they enjoy but would be diminished by the OPC's construction. Plaintiffs invoke only their alleged aesthetic and environmental interests "in Jackson Park" generally, Resp. at 14, but this is precisely the type of claim that fails to meet the Article III standing requirement, as the Seventh Circuit has held: A plaintiff "cannot merely offer 'averments which state only that [the plaintiff] uses unspecified portions of an immense tract of territory, on some portions of which [damaging] activity has occurred or probably will occur by virtue of the governmental action.'" Bensman v. U.S. Forest Serv., 408 F.3d 945, 961 (7th Cir. 2005) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)). Accordingly, Plaintiffs cannot establish standing based on this new theory.

## II.     Plaintiffs' First Amendment Claim Is Unripe.

Plaintiffs' First Amendment claim is non-justiciable not only because Plaintiffs lack standing but also because the claim is unripe. As Defendants explained, the claim is based on two levels of unfounded speculation. First, Plaintiffs theorize that, in the future, the OPC may be used for partisan political activity. Second, Plaintiffs speculate that they will be forced to subsidize that activity through payment of a tax dedicated to the OPC's upkeep. See Mem. at 19-20. Such conjecture is insufficient to create a ripe controversy under Article III.

First, both federal law (which governs the Foundation's status as a tax-exempt entity) and the controlling, City-Council-mandated Use Agreement prohibit the Foundation from using the OPC site for the political advocacy that Plaintiffs speculate may occur in an undefined way at

8

some unspecified future date.  See Mem. at 19–20.  Plaintiffs do not dispute the binding force of these legal dictates.  Instead, they predict that President Obama will somehow use the OPC to "advance certain political causes and candidates in the Democratic Party."  Resp. at 43.  But it is black-letter law that "a party seeking federal jurisdiction cannot rely on such speculative inferences . . . to connect his injury to the challenged actions of the defendant."  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 346 (2006) (internal quotation marks and alterations omitted).  Plaintiffs allege no plausible basis to infer that President Obama or the Foundation will violate federal law or the requirements imposed by the City Council in the Use Agreement, thus jeopardizing the Foundation's tax-exempt status, by engaging in prohibited political activities at the OPC.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (requiring "plausible grounds" for all inferences from plaintiffs' complaint).

Further, even accepting *arguendo* Plaintiffs' implausible prediction that the Foundation will someday engage in partisan political activity at the OPC, there is no plausible basis to infer that municipal tax revenue would be used to subsidize it.  As explained above, taxes collected by the Park District under the Museum Act tax will not, by law, be used to fund any aspect of the OPC.  Likewise, Plaintiffs' new claim that City taxes will be used to fund environmental remediation, road work, and a new track does nothing to advance Plaintiffs' First Amendment claims, for none of this spending relates to any speculative, future partisan political expression.

Finally, Plaintiffs note that in some circumstances courts will relax ripeness standards for First Amendment claims, citing New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1500 (10th Cir. 1995).  See Resp. at 42.  But Gonzales explains that "the primary reason[] for relaxing the ripeness analysis in [the First Amendment] context" is the "chilling effect that potentially unconstitutional burdens on free speech may occasion." 64 F.3d at 1500. Plaintiffs do

not claim that the OPC will be an unconstitutional burden on free speech. Rather, they challenge the government's alleged *promotion* of a third party's speech. Thus, the modified ripeness analysis described in Gonzalez does not apply here.

Defendants note that, in the highly unlikely event that (1) the Foundation would, years from now, violate the law and legal documents governing the site and engage in improper political advocacy, and (2) Plaintiffs would somehow subsidize that activity, Plaintiffs could then assert that they have a First Amendment claim that is ripe for review. But "[a] dispute must have ripened into a legal case *before* a federal court can act; the case must not lie merely in the future." See Jones v. Griffith, 870 F.2d 1363, 1366 (7th Cir. 1989) (emphasis added). For all of these reasons, Plaintiffs' First Amendment claim is unripe, and the Court therefore lacks subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons and those set out in Defendants' opening memorandum, the Court should grant Defendants' motion to dismiss for lack of subject matter jurisdiction.

Date: February 1, 2019

BURKE, WARREN, MACKAY & SERRITELLA, P.C.
Counsel for the Chicago Park District

By: /s/ Joseph P. Roddy

Richard W. Burke
Joseph P. Roddy
Elizabeth Meyer Pall
Susan M. Horner
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, Suite 2100
Chicago, Illinois 60611
(312) 840-7000
Attorneys for Defendant Chicago Park District

Respectfully submitted,

EDWARD N. SISKEL
Corporation Counsel for the City of Chicago

By: /s/ Andrew W. Worseck

John Hendricks
Deputy Corporation Counsel
Andrew W. Worseck
Chief Assistant Corporation Counsel
Justin Tresnowski
Assistant Corporation Counsel
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230

10

        Chicago, Illinois 60602
        (312) 744-6975 / 4-7129 / 4-4216
        Attorneys for Defendant City of Chicago

        Michael A. Scodro
        Britt M. Miller
        Jed W. Glickstein
        Mayer Brown LLP
        71 South Wacker Drive
        Chicago, IL 60606
        (312) 782-0600 (Telephone)
        (312) 701-7711 (Facsimile)
        Attorneys for Defendant City of Chicago

**CERTIFICATE OF SERVICE**

      I, Andrew Worseck, an attorney, hereby certify that on this, the 1st day of February, 2019, I caused copies of **Defendants' Reply In Support Of Their Motion To Dismiss For Lack Of Subject Matter Jurisdiction** to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to all parties that have appeared in this action

                                                      /s/ Andrew W. Worseck