# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

Protect Our Parks, Inc.; Charlotte Adelman; )
Maria Valencia and Jeremiah Jurevis; ) No. 18-cv-03424
    Plaintiffs, )
v. ) Honorable John Robert Blakey
)
Chicago Park District and City of Chicago, ) Jury Demanded
    Defendants. )

**AFFIDAVIT OF MARK ROTH IN SUPPORT OF RULE 56(d)
REQUEST FOR DISCOVERY**

I, Mark Roth, being duly sworn on oath state:

1. My name is Mark Roth. I am an attorney representing Plaintiffs in the instant matter.

2. This Affidavit is based on my personal knowledge and is in support of Plaintiffs' request for discovery, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

3. Under penalties of perjury I would competently testify as follows:

A. <u>Plaintiffs Seek The Following Discovery To Properly Respond To Defendants' Motion For Judgment On The Pleadings If Converted To A Summary Judgment Motion. The Following Will Create A Material Issue of Fact Requiring Denial Of The Defendants' Motion.</u>

1. Documents and depositions from key individuals at the Park District, City of Chicago and the Foundation. The public trust doctrine demands that the transactions involving public trust property, such as Jackson Park, are not tainted with conflicts, insider favoritism, or self-dealing favoring a private party. Plaintiffs expect to prove that Rahm Emanuel's close ties to the Obamas, and his control over the process to locate the OPC in Jackson Park, are the reason for the location in Jackson Park, thus benefiting a private party through the essential give away of public trust property. Depositions of other officials in the City (including alderman who worked on the Zoning Committee, Department of Planning Officials and Park District Officials) will also

be necessary to determine if self-dealing and/or corruption led to such placement and the structure of the deal, rather than other locations that do not involve locating the OPC on public trust parkland but support significant and even greater economic public benefits. If the transaction is properly analyzed, given the information Plaintiffs expect to elicit in discovery, then at a minimum questions of fact exist to preclude summary judgment as to the public trust claim.

2. Depositions from University of Chicago ("UofC") and Anderson Economic Group ("AEG") related to their findings and opinions related to locating the OPC in the three locations suggested by UofC and AEG. The deposition testimony is expected to prove that there are other, more suitable locations for the OPC, which are not on public trust parkland, but provide actual public benefits. These depositions will create a question of fact as to whether the Defendants are violating the public trust by locating the OPC on over 19 acres of open parkland.

3. Documents and a Rule 30(b)(6) deposition related to the "Use Agreement" to be executed by the City and the Foundation pursuant to which the Foundation will occupy the property at issue. The original ordinance provided that the City will enter into a "lease" with the Foundation. The City then approved a "Use Agreement" between the City and the Foundation. The City's Motion for Judgment on the Pleadings admits that the "Use Agreement" is not a "lease." The Court should find that the Defendants' clear, unequivocal statement that the Use Agreement is not a lease is an admission for the purposes of deciding summary judgment. If the Court does not so rule, then the Plaintiffs require discovery on the terms of the "Use Agreement" and whether the Use Agreement is a lease or something other than a lease. This information was specifically already requested in Plaintiffs' First Request to Produce. This issue of whether the Use Agreement is a lease is directly relevant to whether the Museum Act applies to the

Foundation occupying the property. The Museum Act only applies to the OPC in Jackson Park if the Foundation and the City enter into a lease. If the Use Agreement is not a "lease" then the Court must deny Defendants' Motion as it relates to Plaintiffs' due process action, public trust claim and the *ultra vires* count.

4. Documents related to the amendment to the Museum Act, and potentially the deposition of Stephen Patton. The Complaint alleges, and Defendants admit, that the City of Chicago's Corporation Counsel, Stephen Patton, stated that the City drafted the Amendment to the Museum Act specifically to locate the OPC in Jackson Park. The Answer asserts, however, that the Defendants lack knowledge as to whether the State legislature passed the same version of the amendment drafted by the City. Plaintiffs requested documents related to this issue in their First Request to Produce. Defendants expect to prove that the Illinois legislature passed the version of the amendment drafted by the City. That would prove a necessary element of Plaintiffs' special legislation count.

5. Documents and a Rule 30(b)(6) deposition(s) related to the costs to the public, i.e. the citizens of Chicago and State of Illinois, of locating the OPC in Jackson Park and other potential sites. This discovery was requested in Plaintiffs' First Request to Produce. This is a contested issue and one that is import to the case. This issue bears on the public trust claim and the First Amendment claim. The Environmental Remediation and Indemnity Agreement provides that the City will reimburse the Foundation for any previously incurred environmental costs and for any environmental remediation costs. The Defendants claim that the OPC will not cost the City of Chicago taxpayers any money. Plaintiffs have discovered that the Jackson Park Site has an extremely high water table and may contain soil contamination. The Defendants certainly have documents related to the soil condition and the costs, or projected costs, to remediate the Jackson

Park Site, particularly in relationship to the construction of the underground parking garage on the site. Further, the Environmental Agreement requires that the City pay for road alterations necessitated by the OPC, and Plaintiffs seek documents related to the costs, or projected costs, of those road alterations. This information was requested in Plaintiffs' First Request to Produce. Plaintiffs expect to prove that the City of Chicago will be paying significant expenses related to locating the OPC in Jackson Park, which will support Plaintiffs' public trust claim and is essential to Plaintiffs' First Amendment claim. The discovery will, at a minimum, establish that a question of material fact exists related to whether the City of Chicago's taxpayers will be paying expenses related to the OPC and to what degree.

6. Documents and a Rule 30(b)(6) deposition(s) related to the benefits to the Foundation under the terms of the Use Agreement. The Defendants claim all revenue generated by the OPC will just meet the OPC's costs of operation. As Plaintiffs have set forth in their Response Brief, the Use Agreement provides for numerous potential money making opportunities for the Foundation. Some of this information was requested in Plaintiffs' First Request to Produce. Plaintiffs expect to prove that the OPC will provide significant financial benefits to the Foundation, which must be considered in any analysis of a violation of the public trust action. The discovery will, at a minimum, create a question of fact related to whether the City's taxpayers will be or are liable to pay for the OPC in Jackson Park.

7. Documents and a deposition(s) related to the fair market value and rental value of the Jackson Park Site. The Use Agreement provides that the Foundation will pay a total of less than 10 cents per year for 99 years to locate in Jackson Park. The transfer of title to the buildings by the Foundation to the City does not constitute any consideration whatsoever, as the Museum Act already requires the Foundation to transfer title to the City. The fair market value of the Jackson

Park Site and its fair market rental value are directly relevant to the City's violation of the public trust by essentially giving away valuable parkland to the Foundation. The Plaintiffs expect that the discovery will show that the Defendants are violating the public trust by giving the Jackson Park Site to the Foundation for far less than market value rent. The discovery will create a question of fact as to whether the consideration stated in the Use Agreement is the fair value that the City could obtain it if entered into a fair market value transaction. This discovery relates, at a minimum, to Plaintiffs due process, public trust and first amendment claims.

8. Documents and potentially a deposition related to soil borings and the load bearing qualities of the soil in the Jackson Park Site, as well as the costs associated with any addressing issues of soil contamination and the high water table that exists. These all involve material question of fact including, but not limited to, (i) whether the Jackson Park Site may even accommodate the planned underground parking garage and 23 story building given the proximity to Lake Michigan and the high water table, (ii) the costs of any such remediation and addressing issues associated with the high water table which are to be borne by the taxpayers. Plaintiffs requested this information in their First Requests to Produce. At a minimum, the soil tests, water table and costs associated therewith are expected to be reviewed by an expert and will create a question of material fact on the viability of the OPC in Jackson Park. These are all relevant to the public trust claim, due process and first amendment claims.

9. Documents and potentially a deposition of those familiar with uses of the proposed OPC which directly relate to the issues raised by Plaintiffs First Amendment claim that the Plaintiffs will be subsidizing non-governmental speech. The plans for the OPC do not contain any details of the spaces within the OPC, and whether, for example, there will be spaces for Obama's sole

5

use. This information is relevant to Plaintiffs' First Amendment claim, and will at least create a material question of fact as to whether Plaintiffs are subsidizing private speech.

10. Plaintiffs anticipate taking depositions and discovery in regards to the maps and information attached to Defendants motion for judgment on the pleadings that Defendants suggest (without any evidentiary support) support its position in regards to the public trust and Jackson Park. Those documents have no foundation and are conclusory, and require discovery as well as possibly expert testimony.

11. Plaintiffs anticipate taking depositions and discovery in regards to the various leases it has executed for other museums in the parks to address its claims that such museums operate similar to the OPC. Some of the leases were attached to Defendants' Motion for Judgment on the Pleadings, and others were produced as part of a limited production ordered by the Court to allow Plaintiffs to respond to the Rule 12(c) Motion. The Defendants claim that the OPC is merely the latest in a string of other museums located in parks. However, the terms of those other agreements are different than the Use Agreement at issue. The depositions will create a question of material fact as to whether the OPC's Use Agreement is consistent with other museums' occupancy of parkland. These issues relate to Plaintiffs' due process, public trust and First Amendment claims.

12. Any Depositions of any witnesses signing Affidavits or Declarations in support of the Defendants' request for summary judgment (if permitted and submitted), which will be necessary to test the facts or opinions contained in those Affidavits or Declarations.

13. Requests to admit to the Defendants to verify the authenticity of certain documents, which will obviate the need for deposition testimony.

B.  Plaintiffs Have Sought Discovery From The Defendants But Defendants Have Refused To Respond To Plaintiffs' Discovery.

14. This suit was filed on May 14, 2018, and was based on an ordinance that the City council approved in January 2015. Based on the terms of the 2015 ordinance and how the Plaintiffs anticipated Defendants would answer the allegations in the Complaint, the Plaintiffs believed only limited discovery was necessary. The City, on information and belief in direct response to Plaintiffs' Complaint, then spent over five months drafting an amended ordinance seeking to circumvent the allegations of Plaintiffs' Complaint.

15. On May 30, 2018 the Defendants filed a motion for an extension of time to respond to the Complaint and the defer MIDP disclosures. [Dkt No. 14] The motion was set for hearing on June 5, 2018. This Court granted the Defendants' Motion before the hearing in an order dated June 4, 2018 [Dkt No. 17]. The Court required that the Defendants file a motion to dismiss by July 9, 2018.

16. On June 28, 2018, the Defendants then filed a motion for a further extension to file their motion to dismiss and to defer MIDP disclosures. [Dkt No. 19]. This Court granted the Defendants' motion, and stayed the answer date and MIDP until the next court date. [Dkt No. 22].

17. The Defendants then began construction related to the Obama Center despite their prior representation to the Court that no construction related to the OPC would occur. The Plaintiffs accordingly moved to lift the stay to require that the Defendants answer the Complaint and proceed with the litigation. [Dkt No. 23]. During the hearing the Defendants denied that the construction activities at issue related to the OPC. The Court subsequently ordered that the Defendants file their responsive pleading by October 22, 2018. [Dkt No. 26].

18. Plaintiffs subsequently learned that the construction at issue was directly related to the OPC, and the Plaintiffs brought a motion to correct the record brining to the Court's attention the Defendants' misrepresentation. [Dkt. No. 28]. The Court held a hearing on Plaintiffs' motion on September 20, 2018, and the Court stated that discovery could commence, even before the parties' MIDP disclosures. [Dkt No. 31]. On September 27, Plaintiffs served subpoenas for documents on the Obama Foundation and the University of Chicago. [Dkt Nos. 34-5].

19. Defendants filed their Answer to Complaint on October 22, 2018. [Dkt No. 38]. The very next day, after Plaintiffs were aware of the admissions and denials to the allegations the Plaintiffs' Complaint, Plaintiffs served the Defendants with interrogatories and request to produce. [Dkt No. 39]. Copies of Plaintiffs' Interrogatories and First Requests to Produce to the Defendants are attached hereto as Group Exhibit 1.

20. The parties came before the court on a status hearing on October 24, 2018 [Dkt No. 40]. At that hearing the Court ruled that initial MIDP discovery shall be completed on or before November 21, 2018. *Id.*

21. On October 31, 2018 the Plaintiffs served a second requests to produce to both Defendants [Dkt No. 41]. Copies of the Second Requests to Produce to the Defendants are attached as Group Exhibit 2. On November 21, 2018 the Defendants filed a motion to dismiss for lack of subject matter jurisdiction and motion for judgment on the pleadings. On that same day, both parties made their MIDP disclosures. [Dkt Nos. 46-7]. A copy of Plaintiffs' MIDP Disclosure is attached as Exhibit 3. A copy of Defendants' MIDP Disclosure is attached as Exhibit 4. The Defendants did not file answers or objections to any of the Plaintiffs' written discovery requests at any time. Instead, the Defendants filed a motion to stay all discovery pending a resolution on the Defendants' motions. [Dkt No. 50].

8

22. The Plaintiffs have never received documents and depositions necessary to respond to a summary judgment motion. Defendants, in fact, have never even responded to Plaintiffs written discovery, and Plaintiffs have been precluded from obtaining deposition testimony. The Court heard and largely granted the Defendants motion to stay discovery on November 29, 2018. Plaintiffs have never received discovery from the Defendants with the exception of a limited and incomplete production of a few documents that fell within two narrow requests that this Court required the Defendants to produce to respond to the Rule 12(c) motion (which with limited time, Plaintiffs were unable to follow up with in regards to motions to compel, but given the fact that a Rule 12 motion cannot rely on materials outside of the record and not properly subject to judicial notice, the Plaintiffs proceeded with the briefing schedule).

FURTHER AFFIANT SAYETH NOT

Date: February 5, 2019

_____

State of Illinois County of Cook.

This instrument was acknowledged before me on February 4, 2019 by Mark Roth.

(seal)
OFFICIAL SEAL
MARY C MARTIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/06/2020

signature of notary public

9