# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINIOS,
EASTERN DIVISION

| | | |
|---|---|---|
| Protect Our Parks, Inc.; Charlotte Adelman; | ) | |
| Maria Valencia and Jeremiah Jurevis; | ) | No. 18-cv-03424 |
| Plaintiffs, | ) | |
| v. | ) | Honorable John Robert Blakey |
| | ) | |
| Chicago Park District and City of Chicago, | ) | Jury Demanded |
| Defendants. | ) | |

## PLAINTIFFS' INITIAL MIDP DISCLOSURES

Pursuant to the Standing Order for the Mandatory Initial Discovery Pilot (MIDP), Plaintiffs,

Protect our Parks, Inc., Charlotte Adelman, Maria Valencia and Jeremiah Jurevis, collectively

"Plaintiffs", through their counsel, Roth Fioretti, LLC provides the following initial disclosures.

***1.    State the names and, if known, the addresses and telephone numbers of all persons who you believe are likely to have discoverable information relevant to any party's claims or defenses, and provide a fair description of the nature of the information each such person is believed to possess.***

Plaintiff identifies the following persons they presently believe are likely to have

discoverable information relevant to any party's claims or defenses:

| Name/Contact | Nature of Information |
|---|---|
| **Herb Caplan** **Protect Our Parks, available through Plaintiffs' attorneys.** | Knowledge of facts related to standing to maintain the lawsuit, knowledge of the claims in the lawsuit, including the facts on which the claims are based, and the causes of action alleged in the complaint. |
| **Charlotte Adelman, available through Plaintiffs' attorneys.** | Knowledge of facts related to standing to maintain the lawsuit, knowledge of the claims in the lawsuit, including the facts on which the claims are based. |

| | |
|---|---|
| **Barack Obama** | Knowledge of his statements related to use of the Obama Center, and his platform to further his political agenda and that of his political party. |
| **Stephen Patton Corporation counsel City of Chicago** | Knowledge of the Museum Act and drafting amendments to the Museum Act. |
| **The following persons from the Chicago Park District:**<br><br>**Michael Kelly (Michael.Kelly@chicagoparkdistrict.com) – CEO and Superintendent**<br><br>**Patrick Levar (patrick.levar@chicagoparkdistrict.com) -- COO**<br><br>**Heather Gleason (heather.gleason@chicagoparkdistrict.com) – Director of Planning and Development** | Knowledge of the allegations contained in Plaitnff's Complaint and Defendants' Answer. Knowledge of the Park District's transfer of property at issue to the City of Chicago. Knowledge of the Park District's construction activities related to the Obama Presidential Center. |
| **The following persons from the Chicago Department of Planning and Development:**<br>**David Reifman (David.Reifman@cityofchicago.org) -- Commisssioner**<br><br>**Eleanor Gorski (Eleanor.Gorski@cityofchicago.org) – Associate Commissioner**<br><br>**Abby Monroe (Abby.Monroe@cityofchicago.org)** | Knowledge of the allegations contained in Plaitnff's Complaint and Defendants' Answer. Knowledge of roadway changes that must be made related to the Obama Presidential Center, the cost of such changes, the Obama Center's economic impact on the City of Chicago. |
| **The following persons from the Chicago Department of Transportation:**<br>**Rebekah Scheinfeld (Rebekah.Scheinfeld@cityofchicago.org) -- Commissioner**<br><br>**John Sadler** | Knowledge of the allegations contained in Plaitnff's Complaint and Defendants' Answer. Knowledge of roadway changes that must be made related to the Obama Presidential Center, the cost of such changes, the Obama Center's economic impact on the City of Chicago. |

| | |
|---|---|
| (John.Sadler@cityofchicgo.org)-- | |
| **The following persons from the Obama Foundation:** **David Simas (dsimas@obama.org, dsimas@obamapresidentialfoundation.org) CEO** **Robbin Cohen (rcohen@obama.org, rcohen@obamapresidentialfoundation.org) COO** **Michael Strautmanis (Mstrautmanis@obama.org, mstrautmanis@obamapresidentialfoundation.org); Roark Frankel (rfrankel@obama.org, rfrankel@obamapresidentialfoundation.org )** | Knowledge of the benefits to the Obama Foundation as a result of locating the Obama Presidential Center in Jackson Park, knowledge of the benefits to locating the Obama Presidential Center in other locations within the City of Chicago. |
| **Jason Horwitz, Anderson Economic Group, 20 S. Clark Street, Suite 2110** **Chicago, Illinois 60603** **Phone: (312) 670-6810** | Economic impact of locating the Obama Presidential Center at various locations within the City of Chicago. |
| **Representatives from the University of Chicago involved in drafting the UofC's bid package related to the Obama Presidential Center** | Knowledge of the contents of the bid package, alternatives to locating the Obama Presidential Center in Jackson Park. |
| **Representatives from the National Park Service** | Review of Obama Presidential Center proposed for Jackson Park. |
| **Representative from Federal Highway Administration** | Review of Obama Presidential Center proposed for Jackson Park. |
| **Margaret Schmidt, co-president of Jackson Park Watch** | Impact of locating the Obama Presidential Center in Jackson Park, and alternatives to Jackson Park location. |

3

| Charles Birnbaum, The Cultural Landscape Foundation | Impact of locating the Obama Presidential Center in Jackson Park, and alternatives to Jackson Park location. |
|---|---|
| Ward Miller, Preservation Chicago | Impact of locating the Obama Presidential Center in Jackson Park, and alternatives to Jackson Park location. |
| Nord Wennerstrom, The Cultural Landscape Foundation | Impact of locating the Obama Presidential Center in Jackson Park, and alternatives to Jackson Park location. |

**2.      State the names and, if known, the addresses and telephone numbers of all persons who you believe have given written or recorded statements relevant to any party's claims or defenses. Unless you assert a privilege or work product protection against disclosure under applicable law, attach a copy of each such statement if it is in your possession, custody, or control. If not in your possession, custody, or control, state the name and, if known, the address and telephone number of each person who you believe has custody of a copy.**

To the extent that the disclosure requires statements given specifically related to the allegations contained in the lawsuit, Plaintiffs are not presently aware of any such written or recorded statements. However, interviews and quotes have been made by various individuals associated with the City of Chicago, Chicago Park District and the Obama Foundation that relate to the allegations contained in this lawsuit. Such statements are contained in newspapers, including but not limited to the Chicago Tribune and Chicago Sun Times.

**3.      List the documents, electronically stored information ("ESI"), tangible things, land, or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses. To the extent the volume of any such materials makes listing them individually impracticable, you may group similar documents or ESI into categories and describe the specific categories with particularity. Include in your response the names and, if known, the addresses and telephone numbers of the custodians of the documents, ESI, or tangible things, land, or other property that are not in your possession, custody, or control. For documents and tangible things in your possession, custody, or control, you may produce them with your response, or make them available for inspection on the date of the response, instead of listing them. Production of ESI will occur in accordance with paragraph C.2 below.**

Plaintiffs disclose the following categories of documents, as the volume of listing them

individually is impracticable:

- City of Chicago Ordinances and resolutions, including but not limited to City of Chicago Ordinance dated January 2015 ("2015 Ordinance"), and dated on or September 20, 2018 and exhibits thereto ("2018 Ordinance").
- Documents attached to Plaintiff's Complaint.
- Documents referenced in Plaintiff's Complaint.
- Documents related to Jackson Park, its design and historical significance.
- Documents related to the environmental impact of the Obama Presidential Center ("OPC") in Jackson Park.
- Documents related to the City of Chicago and Chicago Park District's work in Jackson Park after the filing of Plaintiff's Complaint.
- Documents related to the Request for Proposal ("RFP") issued by the Obama Foundation ("Foundation") on or about September 15, 2014 related to the OPC.
- Documents related to the proposal submitted by the University of Chicago ("UofC") in response to the RFP.
- Documents related to the impact on traffic as a result of the OPC, in possession of the City of Chicago and the Chicago Park District.
- Documents, including but not limited to communications, between the City and the Foundation regarding the OPC, in possession of the City of Chicago and the Chicago Park District.
- Documents, including but not limited to communications, between the City and the UofC regarding the OPC, in possession of the City of Chicago and the Chicago Park District.
- Documents, including but not limited to communications, between the City and the Park District regarding the OPC, in possession of the City of Chicago and the Chicago Park District.
- Documents related to Urban Park and Recreation Recovery Act grants for Jackson Park and documents related to the City of Chicago's request that the National Parks Service approve amendments to those grant agreements, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the change of boundaries of the OPC Site from the original location proposed in the 2015 Ordinance to the the site for the Obama Presidential Center as defined in the 2018 Ordinance ("OPC Site"), in possession of the City of Chicago and the Chicago Park District.
- Documents related to the analysis related to costs and expenses to the public regarding locating the OPC on the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to public or private benefits regarding locating the OPC on the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to an analysis of the benefits to the Foundation as a result of locating the OPC at the OPC Site, in possession of the City of Chicago and the Chicago Park District.

- Documents related to an analysis of the benefits to the Foundation as a result of locating the OPC at any location in Chicago other than the OPC Site, in possession of the Foundation.
- Documents related to an analysis of the costs and expenses to the public regarding locating the OPC on the Washington Park Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to an analysis, including but not limited to public or private benefits, regarding locating the OPC on the Washington Park Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to an analysis related to the costs and expenses to the public regarding locating the OPC on the South Shore Cultural Center Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to an analysis, including but not limited to public or private benefits, regarding locating the OPC on the South Shore Cultural Center Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to related to the fair market value of the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the real property proposed by the City to be designated as a replacement park property as a result of locating any buildings on the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the real property proposed by the City to be designated as a replacement open space property as a result of locating any buildings on the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to reviews by the National Park Service related to the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to reviews by the Federal Highway Administration related to the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to roadway closures as a result of locating the OPC at the OPC Site, including but not limited to the economic impact and the impact on traffic, in possession of the City of Chicago and the Chicago Park District.
- Documents related to roadway closures as a result of locating the OPC at any location in Chicago, other than the OPC Site, including but not limited to the economic impact and the impact on traffic, in possession of the City of Chicago and the Chicago Park District.
- Documents related to an analysis or study related to environmental or other remediation necessary to accommodate the OPC on the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the City's incremental costs of remediating the OPC Site as referenced in the Environmental Remediation and Indemnity Agreement attached as Exhibit F to the 2018 Ordinance, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the Foundation's concerns regarding the City's lack of control over proposed park sites, as referenced on page 2 of the 2015 Ordinance, in possession of the City of Chicago and the Chicago Park District.

- Covenants, restrictions, deeds, liens, encumbrances and grants related to Jackson Park, in possession of the City of Chicago and the Chicago Park District.
- Covenants, restrictions, deeds, liens, encumbrances and grants recorded on title to the OPC Site.
- Title commitments or title reports related to the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the cost to the City as a result of locating the OPC at the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the cost to the Park District as a result of locating the OPC at the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the cost to the State of Illinois as a result of locating the OPC at the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the reason why the Presidential Center will not include a "Presidential Library," as defined in The Presidential Library Act of 1955, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the OPC's compliance with the Illinois Park District Aquarium and Museum Act, 70 ILCS 1290/0.01 *et seq.* (*"Museum Act"*), in possession of the City of Chicago and the Chicago Park District.
- Documents related to drafts of the Amendment to the Museum Act, in possession of the City of Chicago and the Chicago Park District.
- Documents related to lobbying related to amending the terms of the Museum Act, in possession of the City of Chicago and the Chicago Park District.
- Documents related to communications regarding the Amendment to the Museum Act, in possession of the City of Chicago and the Chicago Park District.
- Documents, including communications, to or from the Foundation related to the Museum Act, in possession of the City of Chicago and the Chicago Park District.
- Documents, including communications, to or from the UofC related to the Museum Act, in possession of the City of Chicago, the Chicago Park District and UofC.
- Documents related to the City's involvement with the Amendment to the Museum Act, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the amendments to the Museum Act enacted in the year 2016's declaration that "The changes made to this Section by this amendatory Act of the 99th General Assembly are declaratory of existing law and shall not be construed as a new enactment," in possession of the City of Chicago and the Chicago Park District.
- Documents related to soil tests related to the OPC Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to soil tests related to the Washington Park Site, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the Foundation paying real estate taxes related to the Obama Center, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the fair market value of the land to be dedicated for use of the OPC Site, in possession of the City of Chicago and the Chicago Park District.

- Documents related to any real property of substantially equal or greater value than the OPC Site to be conveyed in exchange for the Foundation controlling the OPC Site, in possession of the City of Chicago, the Chicago Park District and the Foundation.
- Documents related to the Department of Homeland Security providing security for the OPC, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the reason why the 2018 Ordinance proposed a "Use Agreement," as opposed to a lease referenced in the 2015 Ordinance, in possession of the City of Chicago and the Chicago Park District.
- Documents related to the University of Illinois, Chicago's response to the RFP.
- Documents, including but not limited to communications, between the City and the Foundation regarding the OPC.
- Documents, including but not limited to communications, between the City and the UofC regarding the OPC.
- Documents, including but not limited to communications, between the City and the Park District regarding the OPC.
- Documents related to the terms and conditions under with Museums in Chicago are operated in other Chicago parks.
- Documents related to communications between the City and federal and state agencies reviewing the OPC Site.
- Documents requested in Plaintiffs' First and Second Requests for Production in this case.
- Documents produced by Defendants
- Documents relating to design, creation, and dedication in trust of land to create and maintain Jackson Park.
- Documents related to identification of Jackson Park as a Historic Place.
- Document relating to Jackson Park zoning change.
- Documents related to necessity and decision to pursue the five step Jackson Park land transfers described in the City's 2015 Ordinance and 2018 Ordinance.

**4.**     ***For each of your claims or defenses, state the facts relevant to it and the legal theories upon which it is based.***

The voluminous facts are set forth in the Complaint. To the extent necessary, Plaintiffs incorporate all factual assertions alleged in the Complaint.

In brief, Plaintiffs allege that (a) Jackson Park is owned by the taxpayers of Chicago and Illinois, and the park real estate is public property held in trust for their benefit and use; (b) the existence of Jackson Park has further been recognized and is listed on the National Register of Historic Places; (c) Park District statutes, the U.S. and Illinois Constitutions, bar the summary

transfer of dedicated public park property for the benefit and use of a nongovernmental entity for 99 years for $10.

Count I of the Complaint alleges a cause of action for violation of due process. The controlling law relating to transfer of valuable public park property to a non-government private entity, and the statute most immediately applicable to this attempted "gifting" of control of Jackson Park public parkland to the Obama Foundation, is the Park District Code, 70 ILCS 1205/10-7. It specifically provides, in relevant part:

> Any park district owning or holding any real estate is authorized to convey such property to a nongovernmental entity in exchange for other real property of substantially equal or greater value as determined by 2 appraisals of the property and of substantially the same or greater suitability for park purposes without additional cost to such district.

The Park District and City are effectively conveying the property at issue to the Foundation. The Foundation will manage and control the property for at least 99 years, for almost no consideration.

The transaction at issue in the Complaint violates (1) Article VII, Section 10 of the 1970 Constitution of the State of Illinois; (2) the Intergovernmental Cooperation Act, 5 ILCS 220/1 *et seq.,;* and (3) the Local Government Property Transfer Act. 50 ILCS 605/0.01 *et seq*. Article VII, Section 10 (a) of the Illinois Constitution provides that:

> Units of local government and school districts may contract or otherwise associate among themselves, with the State, with other states and their units of local government and school districts, and with the United States to obtain or share services and to exercise, combine, or transfer any power or function, **in any manner not prohibited by law or by ordinance**.

(Emphasis added)

But the next following Article VIII, Section 1 (a) expressly provides that: "**Public funds, property or credit shall be used only for public purposes**," and the Park District Code, 70-

9

1205/10-7, limits the transfer of public park real estate. The actions taken by the Defendants are clearly "**prohibited by law**."

The Intergovernmental Cooperation Act provides:

(d) The term "restriction" shall mean any condition, limitation, qualification, reversion, possibility of reversion, covenant, agreement or restraint of whatever kind or nature, the effect of which is to restrict the use or ownership of real estate by a municipality as defined in (c) above." and Section 2(b) provides "<u>If any such real estate shall be held by the transferor municipality subject to or limited by any restriction</u>, and the transferee municipality shall desire the use, occupation or improvement thereof free from said restriction, the transferor municipality (or the transferee municipality, in the name of and for and on behalf of the transferor municipality .... shall have the "power to secure from its grantor, or grantors, their heirs, successors, assigns, or others, <u>a release of any or all of such restrictions upon such terms as may be agreed upon between either of said municipalities and the person or persons entitled to the benefit of said restrictions.</u> Upon the recording of any such release the transferor municipality shall then have the powers granted in paragraph (a) of this Section.

(Emphasis added)

Jackson Park was dedicated to the people of the State of Illinois "as a public park . . . free to all persons forever." The Presidential Center is not a public park. The Presidential Center's museum will require admission tickets, and its parking garage will require fees. The private Presidential Center will not at all times be free to all persons forever.

Section 3 of the Intergovernmental Cooperation Act (5 ILCS 220/1), provides: "Any power or powers, privileges, functions, or authority exercised or which may be exercised by a public agency of this State may be exercised, combined, transferred, and enjoyed **jointly with any other public agency of this State** and jointly with any public agency of any other state or of the United States to the extent that laws of such other state or of the United States do not prohibit joint exercise or enjoyment and **except where specifically and expressly prohibited by law**."

The issue with the Park District and the City's scheme with respect to the Presidential Center is that the City does not in any way propose to "exercise, combine, or enjoy jointly" the

10

powers and duties of the Park District in preserving and protecting the open, clear and free public park use of Jackson Park. The issue is Defendants' defiance of the law and their prohibited act of taking dedicated public park land to serve the interests of a non-governmental private entity for a private use. Defendants Park District and City of Chicago make no serious pretense of acting under the authority of this Act. Their conduct is patently a violation of the clear intent and purpose of the Act and a denial of due process.

The Local Government Property Transfer Act, 50 ILCS 605/0.01 *et seq.* ("Property Transfer Act"), allows municipalities, including park districts, to transfer land to other municipalities. The Property Transfer Act, however, does not allow the Park District to transfer the Jackson Park Site to the City in order to permit the City to transfer possession and use to a private non-governmental Foundation to construct, operate and control a constantly changing so called "Presidential Center."

Section 2 of this Property Transfer Act provides as follows:

If the territory of any municipality shall be wholly within, coextensive with, or partly within and partly without the corporate limits of any other municipality, or if the municipality is a school district and the territory of the school district is adjacent to the boundaries of any other school district, and the first mentioned municipality (herein called "transferee municipality"), shall by ordinance declare that it is necessary or convenient for it to use, occupy or improve any real estate held by the last mentioned municipality (herein called the "transferor municipality") in the making of any public improvement or for any public purpose, the corporate authorities of the transferor municipality shall have the power to transfer all of the right, title and interest held by it immediately prior to such transfer, in and to such real estate, whether located within or without either or both of said municipalities, to the transferee municipality upon such terms as may be agreed upon by the corporate authorities of both municipalities, in the manner and upon the conditions following:

(Emphasis added).

11

Pursuant to Section 2 of the Property Transfer Act, if a transferee municipality, such as the City of Chicago, desires to obtain land from another "municipality," a park district, the City may obtain the property for "it [the City] to use, occupy or improve. . ."

Here, it is not the City "using, occupying or improving" the Jackson Park site. Control over the Jackson Park Site is being transferred to a nongovernmental private Foundation, and it is the Foundation alone that will "use, occupy and improve" the Jackson Park site for a privately determined purpose. Therefore, the Property Transfer Act does not allow the Park District to do what it is prohibited from doing by law by the charade of transferring the Jackson Park site to the City to perform the illegal act.

The Park District is subject to another specific restriction on the use of the dedicated public park property at issue.

Section 2(b) of the Property Transfer Act, 50 ILCS 605/2(b), provides:

(b) If any such real estate shall be held by the transferor municipality subject to or limited by any restriction, and the transferee municipality shall desire the use, occupation or improvement thereof free from said restriction, the transferor municipality (or the transferee municipality, in the name of and for and on behalf of the transferor municipality, but without subjecting the transferor municipality to any expense without the consent of its corporate authorities), shall have the power to secure from its grantor, or grantors, their heirs, successors, assigns, or others, a release of any or all of such restrictions upon such terms as may be agreed upon between either of said municipalities and the person or persons entitled to the benefit of said restrictions. Upon the recording of any such release the transferor municipality shall then have the powers granted in paragraph (a) of this Section.

Therefore, if a transferor park district desires to transfer property limited by a restriction to a transferee municipality, the park district may only do so with the agreement of both the transferee municipality and "the person or persons entitled to the benefit of said restrictions."

The term "restriction" is defined in the Property Transfer Act as follows:

The term "restriction" shall mean any condition, limitation, qualification, reversion, possibility of reversion, covenant, agreement or restraint of whatever kind or nature, the effect of which is to restrict the use or ownership of real estate by a municipality as defined in (c) above.

50 ILCS 605/1(d).

In the present case, Jackson Park was dedicated to the people of the State of Illinois "as a public park . . . free to all persons forever." The Presidential Center is not a public park. The buildings that comprise the Presidential Center will not, on information and belief, at all times is free to all persons forever.

Count II alleges a cause of action for breach of the public trust doctrine. The Jackson Park Site is owned by the Park District for a public use, specifically an open space public park.

Under the public trust doctrine, the Park District holds the Jackson Park Site in trust for the benefit of the residents of the City of Chicago and State of Illinois.

The Park District and the City's actions and contemplated actions as alleged herein would cause the Jackson Park Site to be used for a purpose that is in conflict with its public use as an open space park "free to all persons forever."

Further, the Park District and the City's actions and threatened actions of transferring the Jackson Park site from the Park District to the City, and the City then executing a long term ground lease or use agreement for only nominal consideration, transfers the use and control of the Jackson Park Site to the Foundation, which is a private non-governmental entity. The Foundation will have control over public land for at least 99 years.

The action to transfer use and control of this unique and priceless lakefront Jackson Park public property site is an unconstitutional taking as there exists a significant amount of non-park, non-public trust land, on which to beneficially locate a private Presidential Center. Locating the Presidential Center on non-public, non-public park trust land would serve the identical

13

foundation purposes and escape deliberately doing damage to historic Jackson Park. Defendants are in breach of their duty to hold the Jackson Park site in trust for the people of the City of Chicago and State of Illinois as the beneficial owners of such property. A transfer of public trust Jackson Park Site to the Foundation as set forth in the contemplated long term ground lease, violates the public interest needs and purposes for which Jackson Park Site is held in trust.

The beneficiaries of the restriction on the use of Jackson Park as "a public park . . . free to all persons forever" are the citizens of the State of Illinois. The Park District has never obtained the agreement from the citizens of the State of Illinois to allow the transfer of the Jackson Park site to the City of Chicago; and the unelected Commissioners of the Chicago Park District are bound by their oath of office to preserve and protect the public park lands entrusted to their care which they have sworn to do.

The Illinois Park District Aquarium and Museum Act, 70 ILCS 1290/0.01 *et seq*. ("Park District Museum Act"), which contains limited authorization for other uses of park district public land in general only does not authorize the Park District to transfer public trust land to the City of Chicago for the City to in turn transfer the property to a private entity on a long term ground lease. The Museum Act does not release the existing statutory duty of the Park District or the restrictions placed on Jackson Park or the Jackson Park Site that the property be maintained "as a public park . . . free to all persons forever." Further, the Park District Museum Act does not supersede the public trust doctrine's prior application to the Jackson Park site as alleged in this Complaint.

Further, proceeding with the transfer of the public trust Jackson Park site will take, deprive or otherwise diminish the beneficial ownership interest of Plaintiffs and other citizens of the City and State in the property without the required protective procedure and in violation of

14

their rights in such property under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The Defendants' actions constitute an unlawful taking of the Jackson Park site by the Defendants from the Plaintiffs and the people of the City of Chicago and the State of Illinois in violation of the Takings Clause of the Fifth Amendment as incorporated into the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

Count III alleges that the City and Park District's action are *ultra vires*. The Park District's contemplated action of transferring the Jackson Park site to the City of Chicago for $1.00, so that the City will then enter into a long term lease or use agreement with the Foundation has not been authorized by the State of Illinois. The Park District therefore lacks authority for the transaction.

Count IV alleges that the Illinois Museum Act is inapplicable to the proposed Obama Presidential Center. The 2016 Amendment to the Museum Act states on its face that it is not retroactive. The temporal reach of the 2016 Amendment states that the amendment is "declaratory of existing law," and therefore the substance of the 2016 Amendment cannot be made retroactive.

However, the 2016 Amendment is not declaratory of existing law. Existing law at the time of the 2016 Amendment does not state allow aquariums and museums on formerly submerged lands, does not allow undefined "edifices" for "presidential libraries and centers" on park land, and does not allow the gifting of park land to private entities by allowing multiple 99 year leases or use of park land to a private entity – all of which were added in the 2016 Amendment to the Museum Act.

Count V contends that the 2016 Amendment to the Museum Act is unconstitutional special legislation. The 2016 Amendment to the Museum Act provides, *inter alia*, that the corporate authorities of cities and park districts are authorized to erect and maintain:

> edifices to be used as aquariums or as museums of art, industry, science, or natural or other history, **including presidential libraries, centers, and museums, such aquariums and museums consisting of all facilities for their collections, exhibitions, programming, and associated initiatives**, or to permit the directors or trustees of any corporation or society organized for the construction or maintenance and operation of an aquarium or museum as hereinabove described to **erect, enlarge, ornament, build, rebuild, rehabilitate, improve, maintain, and operate its aquarium or museum within any public park now** or hereafter under the control or supervision of any city or park district.
> . .

(Emphasis added)

The 2016 Amendment to the Illinois Museum Act expressly allowing a "presidential center" constitutes special legislation and is therefore unconstitutional. Article IV, Section 13 of the Illinois Constitution provides: "The General Assembly shall pass no special or local law when a general law is or can be made applicable." If in fact "the changes made to this Section are declaratory of existing law and shall not be construed as a new enactment" there was no need for amendment. The fact that Defendant City of Chicago saw the need to do so is a judicial admission that the 2016 Amendment is indeed special legislation.

The 2016 Amendment to the Museum Act was specifically designed to benefit only one entity – the private Obama Foundation (repeating language that tracks the language of the pre-existing City Ordinance) and its plan to build what the Foundation originally called an official "Presidential Library" and which is now ambiguously described as a "Presidential Center."

There can be little doubt that the Museum Act was specifically amended for the sole purpose to retroactively allow the Presidential Center on Park District property. In fact, the City

of Chicago's legal department drafted the amendments to the Museum Act to specifically allow for the continually changing so-called "Presidential Center."

City of Chicago's Corporation Counsel, Stephen Patton, submitted a Statement of Corporation Counsel Stephen R. Patton In Support of the Department of Law's Proposed 2016 Budget ("Statement") in support of the City of Chicago Law Departments proposed 2016 budget. That Statement is dated October 9, 2015.

The Statement expressly provides that the City of Chicago's Department of Law drafted the 2016 Amendment to the Museum Act to allow the Presidential Center. The City of Chicago's Statement states, in relevant part, as follows:

A.      Helping to Secure the Barack Obama Presidential Center for Chicago

In December 2014, the Barack Obama Foundation announced that the University of Chicago's bid to host the Obama Presidential Center was in jeopardy because the University -- one of four finalists in the Foundation's competition to host the library -- did not own or control either of the sites it proposed in Washington and Jackson Parks. The Foundation subsequently made clear that in order for the University's bid to remain competitive, the City would need to develop a plan whereby it would acquire the sites in question and lease them to the Foundation. DOL attorneys worked over the Christmas and New Year holidays to research state law governing the use of park land and develop a plan and draft ordinances and an intergovernmental agreement whereby, if the University's bid were selected, the Chicago Park District would exercise its authority to transfer park land to the City, and the City in turn would exercise its authority to lease the land to the Foundation.

In January 2015, an ordinance was introduced authorizing the inter-governmental land transfer with the Chicago Park District, and that transfer was subsequently approved by the Chicago Plan Commission and the City Council after public hearings. Thereafter, DOL began negotiating the terms of a proposed ground lease and related transaction documents with the Obama Foundation to demonstrate the City's commitment to the project. Finally, last spring, to resolve any questions about the legality of using park land for the presidential center, DOL drafted legislation amending the State's Museum and Aquarium Act to expressly allow the

long-term lease of park land for the center, which was subsequently signed into law in May.

The 2016 Amendment to the Museum Act will benefit only the Foundation. Further, the legislation constitutes special legislation because it is arbitrary and uncertain in that it provides for the inclusion on park district land of any structure without particularity that any unvetted party could baldly contend is a "Presidential Center."

The 2016 Amendment to the Illinois Museum Act is therefore unconstitutional as special legislation in violation of Article IV, Section 13 of the Illinois Constitution.

Count VI alleges a first amendment violation. Former President Obama has made it known that he intends to use his Center as a "bully pulpit" to continue his political activities by raising money for the Democrat Party, endorsing individual candidates for election, speaking out on controversial partisan political issues, and being outspoken in critiquing the actions of succeeding presidents and elected members of Congress with whom he disagrees.

There is, of course, no objection to former president Obama exercising all his First Amendment Rights and using all the resources and facilities within his control. However, the Museum Act, which provides for a "Presidential Library" or "museum" with a collection of Mr. Obama's political mementos in Jackson Park, also provides for a new real estate tax to be imposed upon all City property owners for the specific purpose of supporting that Library or Museum.

Section 2 of the Museum Act states, in relevant part, that the Board of public park commissioners may:

> **levy annually a tax** not to exceed .03 per cent in park districts of less than 500,000 population **and in districts of over 500,000 population not to exceed .15 percent of the full, fair cash value**, as equalized or assessed by the Department of Revenue of taxable property embraced in said district, according to

18

the valuation of the same as made for the purpose of State and county taxation by the general assessment last preceding the time when such tax hereby authorized shall be levied: **Such tax to be for the purpose of establishing, acquiring, completing, erecting, enlarging, ornamenting, building, rebuilding, rehabilitating, improving, operating, maintaining and caring for such aquarium and museum or museums and the buildings and grounds thereof; and the proceeds of such additional tax shall be kept as a separate fund. Said tax shall be in addition to all other taxes which such board of park commissioners is now or hereafter may be authorized to levy on the aggregate valuation of all taxable property within the park district**. Said tax shall be levied and collected in like manner as the general taxes for such parks **and shall not be included within any limitation of rate for general park purposes** as now or hereafter provided by law **but shall be excluded there from and be in addition thereto and in excess thereof**.

(Emphasis added)

The Obama Foundation will not pay real estate taxes. The effect of this special Obama Center tax on the public is therefore to make individuals who politically disagree with Mr. Obama on his political, environmental, or educational initiatives be nevertheless involuntarily compelled to contribute money to enable him to successfully pursue all his personal political and other initiatives and objectives. This is a denial of citizens own First Amendment rights of speech and assembly, and an unconstitutional exercise of governmental power.

*5.     Provide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered. You may produce the documents or other evidentiary materials with your response instead of describing them.*

The monetary value of the loss of irreplaceable historic landmarked public park land is incalculable; and if it is contended to be available under due process of law, Defendants Park District and City have not even attempted to obtain an appraisal and determine a value as required by Park District statute for a land transfer of benefit and use of dedicated public park land to a nongovernmental entity, nor instituted a conventional land taking condemnation action.

19

Absent a permanent injunction, the public interest damage to be experienced is irreparable. Plaintiffs seek injunctive relief and declaratory relief. Specifically, Plaintiffs seek an Order:

A.    Enjoining the conveyance by Park District to the City of Chicago of the Jackson Park Site;

B.    Enjoining the Park District and the City of Chicago from approving or allowing the construction of the Presidential Center on the Jackson Park Site, public trust lands;

C.    Declaring that the purported conveyance of the Jackson Park Site to the City of Chicago invalid and without legal effect as an *ultra vires* act;

D.    Enjoining the long term ground lease or use agreement from the City to the Foundation of any property rights or interest in or control of the Jackson Park Site;

E.    Enjoining the Defendants from approving or allowing the Foundation to construct a museum and other structures, including but not limited to a library, forum, athletic center, parking garage and other structures on the Jackson Park Site;

F.    Declaring the Illinois Museum Act does not authorize the Presidential Center in the Jackson Park site;

G.    Declaring the 2016 Amendment to the Illinois Museum Act allowing undefined edifices constituting a presidential center is unconstitutional as special legislation; and

H.    Plaintiffs also seek an award of attorney's fees and costs.

**6.    Specifically identify and describe any insurance or other agreement under which an insurance business or other person or entity may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse a party for payments made by the party to satisfy the judgment. You may produce a copy of the agreement with your response instead of describing it.**

N/A

20

Dated: November 21, 2018

Respectfully submitted,

/s/Mark D. Roth
*Attorney for Plaintiffs*


Mark D. Roth
Robert Fioretti
Roth Fioretti LLC
311 S. Wacker, Suite 2470
Chicago, IL 60606
(312) 922-6262
Mark@rothfioretti.com
Rwfchicago@yahoo.com


## Certificate of Service

I hereby certify that on November 21, 2018, a copy of the foregoing ***Plaintiff's Initial***

***MDIP Disclosures*** was served on the following counsel of record for Plaintiff via electronic

mail from the email address mark@rothfioretti.com:


**Richard W. Burke,**
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue
22nd Floor
Chicago, IL 60611-3607
(312) 840-7000
Voluntary Withdraw (fax)
rburkesr@burkelaw.com


**John Lawrence Hendricks**
City Of Chicago Department Of Law

21

30 North Lasalle St, Suite 1230
Chicago, IL 60602
(312) 744-6975
Not a member (fax)
john.hendricks@cityofchicago.org

**Susan M. Horner**
Burke Warren MacKay & Serritella
330 N. Wabash Ave.
22nd Floor
Chicago, IL 60611
312 840 7000
Delinquent (fax)
shorner@burkelaw.com

Elizabeth Meyer Pall
Burke, Warren, Mackay & Serritella, P.c.
330 N. Wabash
Suite 2100
Chicago, IL 60611
(312) 840-7099
Not a member (fax)
epall@burkelaw.com

Joseph P. Roddy
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue,
22nd Floor
Chicago, IL 60611
(312) 840-7000
Active (fax)
jroddy@burkelaw.com

Justin Tresnowski
City of Chicago Department of Law

Constitutional and Commercial Litigation Division
30 N. LaSalle Street
Suite 1230
Chicago, IL 60602
(312) 744-4216
Not a member (fax)
jtresnowski@gmail.com


Andrew W Worseck
City of Chicago, Department of Law
30 North LaSalle Street
Suite 1230
Chicago, IL 60602
(312) 744-7129
Active (fax)
aworseck@cityofchicago.org


Jed Wolf Glickstein, Britt Marie Miller and Michael Anthony Scodro
Mayer Brown, LLP
71 S. Wacker Dr
Chicago, IL 60606
(312) 701-8704
jglickstein@mayerbrown.com, bmiller@mayerbrown.com, mscodro@mayerbrown.com


/s/Mark D. Roth


Mark D. Roth
Robert Fioretti
Roth Fioretti LLC
311 S. Wacker, Suite 2470
Chicago, IL 60606
(312) 922-6262
Mark@rothfioretti.com
Rwfchicago@yahoo.com