IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| Protect Our Parks, Inc.; Charlotte Adelman; Maria Valencia and Jeremiah Jurevis;  Plaintiffs, v.  Chicago Park District and City of Chicago,  Defendants. | No. 18-cv-03424  Honorable John Robert Blakey Magistrate Mary Rowland |

**PLAINTIFFS' BRIEF REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' RULE 56(D) SUBMISSION**

Now come the Plaintiffs, Protect Our Parks, Inc.; Charlotte Adelman; Maria Valencia and Jeremiah Jurevis, through their attorneys, Roth Fioretti, LLC, and for their Brief Reply To Defendants' Response To Plaintiffs' Rule 56(D) Submission, state:

Defendants have filed a Response To Plaintiffs' Rule 56(D) Submission ("Response"). The Response was filed without leave of Court, and no briefing schedule was set for any such Response. Further, Defendants filed the Response just a few hours before the close of business, and the day before a hearing, at which time the Court will discuss entering a discovery order.

Plaintiffs do not have adequate time to dissect the numerous misstatements of law and fact contained in Defendants' Response. Plaintiffs do, however, desire to provide case law that is directly contrary to Defendants' central theme in the Response.

Defendants' primary contention is that this Court may not scrutinize in any way the City Council's decision to locate the Obama Center in Jackson Park, provided that the City Council noted some benefit to locating the Obama Center in Jackson Park. The Defendants claim that total deference to the City Council is mandated. Defendants further claim that the Plaintiffs are not allowed any discovery, or presumably, to introduce any evidence that contradicts or undermines the City Council. That is not the law.

1

The holdings in the *Friends of the Parks v. Chi. Park District,* 160 F. Supp. 3d 1060 (N.D. Ill. 2016) ("*Lucas Museum*"), and *Lake Michigan Fed'n v. U.S. Army Corps of Engin'rs*, 742 F. Supp. 441 (N.D. Ill. 1990), are instructive.  The plaintiffs in *Lucas Museum*, as in our case, alleged that the public trust property was being improperly transferred to a private museum foundation in order to serve private purposes.  The *Lucas Museum* Court explained the public trust doctrine as follows:

> Under the public trust doctrine, the State cannot "abdicate its trust over property in which the whole people are interested . . . so as to leave them entirely under the use and control of private parties. (citations omitted).  The purpose of the public trust doctrine "is to police the legislature's disposition of public lands." "If courts were to rubber stamp legislative decisions, the doctrine would have no teeth. The legislature would have unfettered discretion to breach the public trust as long as it was able to articulate some gain to the public. (citations omitted).
>
> Three basic principles can be distilled from this body of public trust case law. First, courts should be critical of attempts by the state to surrender valuable public resources to a private entity. . . . Second, the public trust is violated when the primary purpose of a legislative grant is to benefit a private interest. . . . Finally, any attempt by the state to relinquish its power over a public resource should be invalidated under the doctrine.

*Friends of the Parks,* 160 F. Supp. 3d at 1067 (citing *Lake Michigan Federation,* 742 F. Supp. at 445).

The Defendants' claims that this Court must simply rubber stamp the City Council's decision is directly contrary to the law.

Further, as Professor Richard Epstein referenced in his Amicus Brief filed in this case[1]:

> The public trust doctrine is the mirror image of the eminent domain clause. Both are designed to place limitations on the power of the legislature to divert property, whether held privately or in common, from A to B, or more generally from a group of As to a group of Bs. Both doctrines derive from a strong sense of equity that condemns these uncompensated transfers as a genteel from of theft, regardless of whether the holdings are public or private.
> Epstein, *The Public Trust Doctrine,* 7 Cato Journal 411, 426 (Fall 1987).

---

[1] Dkt No. 69-1 At PageID#1946-47.

> In a typical eminent domain case, the government is prohibited from taking property from a private party to serve a primarily private purpose. In such cases, a heightened scrutiny is applied to the determination of whether there was in fact a public use associated with the taking. *See, e.g. Sw. Ill. Dev. Auth. v. Nat'l City Envtl., L.L.C.,* 199 Ill.2d 225, 239 (2002). In that case, the Illinois Supreme Court rejected the exact argument advanced here by the Group (and the Defendants), namely that the "wisdom . . . of the legislation and the 'means of executing the project' are beyond judicial scrutiny 'once the public purpose has been established.' . . . We disagree. The Constitution and the essential liberties we are sworn to protect control." *Id.* at 242. Given the number of individuals impacted by the transfer of public trust property, the application of heightened scrutiny is more than appropriate. To that same point, the need to scrutinize transactions that may be tainted with fraud, conflicts, and/or insider favoritism is further reason to have meaningful judicial review, as is done when courts evaluate the conduct of trustees and fiduciaries in private transactions.

The Defendants rely on the decision in *Friends of the Parks v. Chi. Park Dist*., 203 Ill. 2d 312 (2003), which involves dissimilar facts. That case did not concern the Museum Act but rather the Illinois Sports Facilities Authority Act, 70 ILCS 3205/1, *et seq*., as it applied to the renovation of Soldier Field, home to the Chicago Bears, and also the construction of a parking lot on adjacent park property. Soldier Field was built in 1924. Its infrastructure was deteriorating, and there was a critical need for additional parking for use by the public. The Illinois state court in that case noted that the stadium would remain subject to control of the Chicago Park District. The Illinois appellate court found that renovating Soldier Field, which had existed for almost 80 years at that point, did not violate the public trust doctrine. *Id.* at 327-28. That decision has little relevance to our case. Here, instead of renovating an existing, deteriorating structure, the City Council is ordering the destruction of 19 acres of a largely unspoiled section of historic Jackson Park in order to build OPC, while the City has other more desirable locations for the Obama Center that would not even be built on public trust property.

Further, the City is locating the Obama Center on valuable parkland for the entire consideration of 10 cents per year, over a 99-year period of time. Essentially, absolutely no

3

consideration. In addition, the City will use millions of dollars in tax revenue in order to change existing roads and will use City of Chicago taxpayer money on other expenses such as environmental remediation, traffic surveys, etc. - all to primarily benefit one entity, the Obama Foundation.

This is the exact type of transaction that requires the scrutiny required by *Lucas Museum* and *Lake Michigan Federation*. The entire premise of the Defendants' Response that the Plaintiffs cannot obtain discovery on the merits of, and costs and benefits of, locating the Obama Center in Jackson Park is unfounded.

Defendants further claim that the Plaintiffs are not entitled to any discovery because the Plaintiffs asked for and received two categories of documents from the Defendants. However, the Plaintiffs asked for two categories of documents in order to respond to the Defendants' Rule 12(c) Motion. Now, the Plaintiffs are potentially responding to a Rule 56 Motion. Therefore, the Plaintiffs' request for two categories of documents to respond to a Rule 12(c) motion should in no way preclude the Plaintiffs from seeking discovery necessary to respond to a motion for summary judgment.

Plaintiffs will certainly address any other remaining issues at tomorrow's hearing.

                                            Respectfully submitted,

                                            /s/ Mark D. Roth
                                              Mark D. Roth

Roth Fioretti, LLC
Mark Roth
Robert Fioretti
311 S. Wacker Drive, suite 2470
Chicago, IL 60606
Phone: (312) 922-6262
Email: mark@rothfioretti.com
rwfchicago@yahoo.com

4